COOK et al. v. CROW et al. (MARION STATE BANK, Intervenor).

No. 6076.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1939.

Rehearing Denied Jan. 5, 1940.

H. G. Fields, of Farmerville, and J. B. Crow, of Shreveport, for appellants.

Barksdale, Warren & Barksdale, of Ruston, for appellees.

T. C. Bergeron, of Farmerville, for intervenor.

TALIAFERRO, Judge.

The lower court rendered two opinions in this case wherein the facts, record and otherwise, are clearly and correctly set out. We quote and adopt the following narrative of such facts, appearing in the first opinion, to-wit:

"On the 28th day of September, 1921, J. B. Crow made and signed three promissory notes payable to Dr. W. S. Harrell, each for the sum of six hundred dollars and bearing 8% per annum interest from date, until paid, and due one, two and three years, respectively, after date. Jas. M. Colvin, T. A. Green, Roy Cook and W. S. Moore endorsed each of said notes as accommodation endorsers.

"In order to further secure the payment of said notes, said J. B. Crow and his wife, Mrs. Lecy J. Crow, on the aforesaid date, executed a mortgage, by private act, to and in favor of Dr. W. S. Harrell, or to any bona fide holder of said notes or either of them, covering an undivided eight-twenty-sevenths ($\frac{8}{27}$) interest in a certain lot of land, situated in Union Parish, Louisiana, owned by said J. B. Crow and Mrs. Lecy J. Crow, Mrs. Crow's interest therein being her separate property. This act of mortgage was recorded in the mortgage records of Union Parish on the 30th day of September, 1921.

"On the 17th day of January, 1929, J. B. Crow and Mrs. Lecy J. Crow sold a portion of the land covered by their mortgage to Dr. Harrell, to M. E. Crow, a resident of Union Parish, Louisiana, for a cash consideration of $2,750, and the deed of conveyance was filed and recorded in the conveyance records of Union Parish on the 24th day of January, 1929.

"On the 3rd day of April, 1931, J. B. Crow caused the act of mortgage to be reinscribed in the mortgage records of Union Parish.

"In the course of time, J. B. Crow paid in full the first of said series of notes, that is, the one due one year after date, and made partial payments on the other two.

"Jas. M. Colvin died on the 2nd day of May, 1932. His estate was insolvent and nothing was paid therefrom on said notes.

"Some time during the year 1937, J. B. Crow having failed to pay the remaining two notes in full, Dr. Harrell made demand on Roy Cook, T. A. Green and W. S. Moore, the remaining endorsers thereon, to pay same, and they did so. Whereupon, Dr. Harrell transferred said notes to them without recourse.

"Roy Cook, T. A. Green and W. S. Moore bring this suit against J. B. Crow and Mrs. Lecy J. Crow, the makers of the mortgage, to foreclose same, and they make M. E. Crow, the purchaser of the land, a party to the suit as a third possessor.

"On the 7th day of January, 1932, M. E. Crow executed a mortgage in favor of Marion State Bank and included therein the land which he had acquired from J. B. Crow and Mrs. Lecy Crow. Marion State Bank has intervened in this suit, asserting the validity of its mortgage, and joined forces with M. E. Crow, J. B. Crow and Mrs. Lecy J. Crow in defense of the suit.

Their defenses for all practical purposes are identical and will be referred to herein and treated as such."

On June 9, 1938, the case was partially tried, and continued to a definite date. On the day trial was resumed, the Marion State Bank and M. E. Crow filed a joint plea of prescription of five years, based upon Art. 3540 of the Civil Code, which reads as follows: "Action on bills of exchange, notes payable to order or bearer, except bank notes, those on all effects negotiable or transferable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable."

This plea was referred to the merits without prejudice. The trial of the case was concluded. Argument was had and the Court took it under advisement, but before decision was rendered the defendants filed in the office of the Clerk of Court a plea of prescription of five years. Thereafter, counsel for plaintiffs filed a motion to reopen the case, alleging:

" 'That since the submission of this case, J. B. Crow and Lecy J. Crow, two of the defendants herein, have filed a plea of prescription; that under the law this case should be re-opened for the purpose of submitting evidence on this plea of prescription.

" 'Plaintiffs further show that J. B. Crow, upon cross examination of Dr. W. S. Harrell, plaintiff's witness, established payment of several credits, one in the amount of $400.00, but did not establish the date of such payments, and for the purpose of establishing such dates, had the said Dr. W. S. Harrell agree to furnish for filing in evidence, a complete statement of all credits due on said note, but the said statement, if furnished by the said Dr. W. S. Harrell, has not been filed in evidence and made part of the record in this case, and the case should therefore be re-opened for the purpose of offering any evidence which is pertinent to the question of whether or not the notes sued on have prescribed.' "

This motion was denied for the reason, assigned by the trial judge, that under the pleadings no testimony to prove an interruption of the current of prescription on the notes sued on, would be admissible. The pleas of prescription were sustained and the case ordered dismissed.

Plaintiffs applied for a new trial or a rehearing. The latter was granted. The

458

Court then reversed itself in a well written opinion, which we here quote in full, with approval, except in those respects hereinafter discussed, to-wit:

"On the original trial of this case upon its merits, the Court sustained pleas of prescription of five years filed herein by the defendants and intervenors.

"The plaintiffs thereafter filed a motion for a rehearing, and, upon due trial of said motion, a rehearing was granted.

"In their motion for a rehearing and in their counsel's brief, the plaintiffs submit the proposition that they were not required by law to anticipate the filing of a plea of prescription and negative prescription in their petition; that prescription is a weapon of defense and when used as such, they have the right to rebut same and show the interruption of prescription without any allegations having been made by them in their petition, or otherwise, to support their proof.

"Their contention is correct. The Court was in error in sustaining the pleas of prescription.

"In the case of White v. Davis, 169 La. 101, 124 So. 186 (page 188), the Supreme Court said:

" 'We know of no authority which requires a plaintiff to anticipate a plea of prescription. If the petition otherwise sets forth a cause of action, the suit cannot be dismissed on an exception of no cause of action because the evidence of the debt sued upon is prescribed on its face. Prescription is a defense which must be pleaded, and there must be a hearing thereon, a fortiori the plaintiff might show an interruption of prescription. Prescription may be waived. Many persons observe their moral obligations as faithfully as they do their legally enforceable ones, and the books are full of cases where enforceable judgments have been rendered where prescription might have been successfully pleaded as a bar to recovery.'

"In the case of Klopstock v. United Fruit Company, 171 La. 296, 131 So. 25 (page 28), the Supreme Court said:

" 'Plaintiff was not called upon to anticipate the plea of prescription in its pleadings, and as replications are unknown to our law, he had the right to offer any evidence, at his command, to defeat the plea without further pleading.'

"And in the case of Commercial National Bank v. McDaniel, 156 So. 43 (page 47), the Court of Appeal said:

" 'It is further urged that, as plaintiff did not specifically allege that the current of prescription on the notes had been interrupted by the extension of payment thereon, no evidence was admissible to prove the interruption. We do not think this contention tenable. The petition states that the notes are annexed to it and made a part thereof. There is nothing in the record to show that the notes were not so annexed. If not, defendant had the right to require their production before answering. When defendant filed the plea of prescription against the notes, a clear-cut issue was tendered thereby, and without formal answer or pleading by plaintiff, it had the right to offer any sort of legal testimony that would defeat the plea. Defendant carried the burden of sustaining his plea. When a prima facie case was made out by him, it devolved upon plaintiff to overcome this case by proving that defendant agreed to the extension indorsed on the notes, thereby interrupting the course of prescription.'

"Also see the recent case of Succession of Thompson [191 La. 480], 186 So. 1.

"The cases cited in the original opinion in this case are appropriate to the issue only in so far as they hold that the burden is on the plaintiffs to prove facts sufficient to show interruption of prescription. That burden still rests upon them. The error that the Court made was in holding that the plaintiffs were required to anticipate the pleas of prescription and negative same by pleading facts that would show the interruption of prescription. The plaintiffs, under the cases cited above, may discharge that burden by offering legal testimony to defeat said pleas in rebuttal.

"In order that justice might be done between the parties, a motion to re-open the case filed by the plaintiffs was sustained and the plaintiffs were permitted to offer testimony for the purpose of showing that the current of prescription running against the notes sued upon, had been legally interrupted.

"After the motion to re-open the case had been sustained and on rehearing, the plaintiffs offered the testimony of Dr. W. S. Harrell, the original payee and holder of said notes, to show, and said testimony does show, that J. B. Crow, the maker of said

notes, made the following payments on them, to-wit:

September 29, 1923 .............. $120.00
November 28, 1924 .............. 240.00
January 4, 1927 ................. 60.00
May 1, 1927 ..................... 120.00
March 23, 1928 .................. 60.00
January 15, 1929 ................ 400.00
April 22, 1932 .................. 25.00
October 14, 1933 ................ 50.00
September 7, 1934 ............... 5.00
February 13, 1935 ............... 15.00
January 12, 1936 ................ 50.00
March 15, 1936 .................. 25.00
September 1, 1936 ............... 25.00

"It is not claimed by defendant, J. B. Crow, the maker of the notes, that any of the above recited payments were not made and that he has not received proper credit for them on the said notes. His only complaint is, as the Court understands and appreciates it, that, prior to July 12, 1931, he paid interest on said notes at the rate of ten per centum per annum, whereas the interest rate is stipulated in the face of the notes to be eight per centum per annum. Defendant knew that he was paying a greater rate of interest than the interest provisions of the notes required him to pay. As a lawyer, he knew that he was not legally liable for the increased rate. But he paid it apparently without objection. On July 12, 1931, he signed a written agreement on the back of each note, stipulating the balance then due on each of said notes. After the date of that stipulation he paid only eight per centum per annum interest on said notes. Plaintiffs, when they took up these notes from Dr. Harrell, relied upon the correctness of said stipulation as to the amount due on these notes on July 12, 1931, and now the maker of said notes cannot gain credit for the amount of the excessive interest rate paid by him to Dr. Harrell to the hurt of the plaintiffs, the present legal and good faith holders of said notes.

"The testimony of Dr. Harrell establishes the fact beyond question that at no time during the period intervening between the date of the said notes and the date on which this suit was filed did a period of five years elapse without one or more payments having been made on these notes.

"But counsel for the defendants contend that the testimony of Dr. W. S. Harrell is not admissible for the purpose of showing an interruption of prescription on the theory that Article 2278 of the Civil Code of Louisiana prohibits the use of parol testimony for such purpose.

"When J. B. Crow made the aforementioned payments on the notes in question, Dr. Harrell did not enter them in writing on the back of the notes, but, instead, entered them in a book or other record which he kept for such purposes. He had this record before him when he gave his testimony.

"The provision of C.C. Art. 2278, relied upon by defendants as the basis for their objection to Dr. Harrell's testimony, is as follows:

" 'Parol evidence shall not be received:

" '1. * * *

" '2. * * *

" '3. * * *

" '4. Renunciation of Acquired Prescription. To prove any acknowledgment or promise to pay any debt or liability, evidenced by writing, when prescription has already run. * * *'

"The meaning of the above quoted provision of Article 2278 is clear and unmistakable. It deals only with the use of parol evidence in proving an acknowledgment or promise to pay a debt evidenced by writing, when or after prescription has already run. It makes no reference to the use of parol evidence to prove payments on a promissory note made before prescription has already run. The fact is, it favors the use of parol evidence, such as that given by Dr. Harrell, and for the purpose his testimony was offered to serve. The issue here is not that the plaintiffs are trying to show the renunciation of an acquired prescription, but it is that they are attempting to show the interruption of the current of a period of prescription that was never completed.

"Counsel for defendants cite the cases of Adams v. Succession of Mills, 49 La. Ann. 775, 22 So. 257, and Succession of Driscoll, 125 La. 287, 51 So. 200, in support of their contention. A careful reading of these cases will disclose that they do not touch on the issue involved in the case at bar.

"On the other hand, the cases of Utz v. Utz, 34 La.Ann. 752; Henry Block Co. v. Papania, 121 La. 683, 46 So. 694; and Coreil v. Vidrine, 188 La. 343, 177 So. 233, hold specifically that parol evidence to establish the interruption of prescription is

permitted under paragraph 4 of Article 2278 of the Revised Civil Code.

"The objection to Dr. Harrell's testimony is without merit, and the pleas of prescription of five years are overruled.

"Defendant, Mrs. Lecy J. Crow, makes the defense that the interest in the property covered by the act of mortgage owned by her, was her separate and paraphernal property; that she was and is the wife of J. B. Crow, and that, for that reason, her said property could not be legally mortgaged by her for a debt of her husband or for the benefit of the community then existing between the two.

"It is admitted by the parties to this suit that Lecy J. Crow owned an undivided one-eighth interest in the property covered by the mortgage, and that same was her separate and paraphernal property, and that at the time of the execution of the act of mortgage she had same under her separate administration and control.

"Article 2398 of the Civil Code of Louisiana reads:

" 'The wife, whether separated in property by contract or by judgment, or not separated, can not bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage.'

"Applying the provisions of the Article of the Code quoted to the admitted facts in connection with this issue, we find that Mrs. Crow's defense is good, unless some intervening or subsequent act of hers has had the effect of binding her.

"As a bar to the right of Mrs. Lecy J. Crow to maintain her defense that the mortgage is not legally binding on her separate property, the plaintiffs filed a plea of prescription of five years, in which they set out 'that the said Mrs. Lecy J. Crow has never in any manner judicially or otherwise, contested said mortgage and contract, has never instituted any action to have the same declared null and void, and that, inasmuch as no such action was taken within five years after the effective date of Act 283 of 1928, said defendant and her husband and all other parties are estopped to attack the validity of said mortgage and contract for the reason that such silence and inaction creates a presumption of ratification of such act of mortgage.'

"The case of Brownson v. Weeks, 47 La. Ann. 1042, 17 So. 489, is cited in support of the above plea.

"The case is not in point. In that case it is shown that the plaintiff, Mrs. Brownson, claimed that under improper marital influence, and without any consideration enuring to her or to the benefit of her separate property, but to secure a debt due by her husband, she executed a mortgage on her property to a Mrs. Catherine Stouff. That to pay this mortgage, the property was sold and was purchased by the mother-in-law of the plaintiff, who subsequently sold it to the defendant. Plaintiff's husband died, but thereafter the plaintiff permitted the defendant to take possession of the property and to continue in possession of it for six years, during which time he made valuable improvements on it. The Court held that inasmuch as no legal impediment existed after the death of her husband to prevent plaintiff from bringing an action in nullity, and not having done so for a period of six years, her silence and inaction during the time fixed for prescription amounted to a presumption of ratification of her part.

"It is obvious that no such factual situation is found in the case at bar as that which existed in the cited case.

"We think the cases of Otis v. Texas Company, 153 La. 384, 96 So. 1, and Hamilton v. Moore, 136 La. 631, 67 So. 523, are appropriate to the issue in the case at bar.

"In the Otis case, supra ([153 La. at] page 399 [96 So. at page 6]), the Supreme Court said:

" 'Defendant Alice Lewis, being always in possession of the property, had the absolute right to either take the initiative and to sue to rescind and annul the sale for want of the authorization of her husband, or to stand indefinitely upon her possession and on the defensive with the privilege of asserting the illegality of the sale by way of exception and answer at any time she might be sued by the alleged purchaser for the delivery of the property.'

"The Hamilton case, cited supra, holds to the same effect.

"Act 283 of 1928 had the effect of liberating Mrs. Lecy J. Crow from the marital influence of her husband and fixed her right to attack the mortgage. But she did not have to attack it in order to assert its nullity. When sued in an action to foreclose the mortgage, she had the right under a fundamental principle of our civil law, to attack it by way of answer or exception, though it be prescribed.

"We think that Mrs. Crow has maintained her defense to the effect that the act of mortgage was not binding on her property.

"There were other issues raised by defendants and intervenors in their pleadings. Their counsel have not urged them in their briefs. No authorities have been cited in an effort to sustain any of them. They appear to be wholly without merit, and, for these reasons, they will not be discussed and passed upon herein.

. "Accordingly, the plaintiffs are entitled to judgment in this case as prayed for, except as to their demands against defendant, Mrs. Lecy J. Crow, which demands are rejected.

"E. L. Walker
"Judge."

Judgment was rendered in keeping with said second opinion, in favor of plaintiffs, for:

1. $417.94 with 8% interest from July 1, 1931;

2. $770.34 with 8% interest from July 1, 1931, on $600 thereof, together with 10% of principal and interest as attorney's fee, less certain credits therein named. The mortgage foreclosed upon was recognized, maintained and rendered executory against an undivided $\frac{37}{216}$ interest in the lands described therein. M. E. Crow was ordered to deliver and relinquish said property within 30 days, in order that the judgment might be enforced against it; and in default of so doing, he was ordered to pay plaintiffs the full amount of said judgment.

The demands of the bank, as intervenor, were rejected. The bank and J. B. Crow were cast in solido for all costs.

Defendants, M. E. Crow, and the intervenor appealed.

█ In this Court neither the intervenor nor M. E. Crow has made appearance, nor have they filed briefs. Presumably they have abandoned their appeals.

Defendants here complain of the judgment in only two respects, to-wit:

The overruling of their plea of prescription and the rejection of their contention that plaintiffs, who were accommodation endorsers, in any event, should not recover judgment for any amount in excess of the principal amount paid by them to Dr. Harrell for the notes.

Plaintiffs, appellees, are dissatisfied with the judgment only to the extent that it rejects their contention that Mrs. Crow, on account of long silence and inaction, has ratified the mortgage of her interest in the property involved, and, therefore, is estopped and precluded from challenging the mortgage's validity as regards her.

█ The lower Court dealt at length with all of these issues, save that tendered by defendants that as plaintiffs paid Dr. Harrell only $825 to extinguish their liability on the notes, they may not recover any amount in excess of this sum. The lower Court inferentially rejected this contention. We are of the opinion that, in this respect, there is error in the judgment appealed from.

█ When plaintiffs paid to Dr. Harrell the $825 to protect their endorsements on the notes, he endorsed the notes "without recourse" and delivered them to plaintiffs or their attorney. This payment had the effect automatically of subrogating plaintiffs to all the rights and rights of action, including the accessory right of mortgage security, which were held and owned by Dr. Harrell at the time. Civil Code, Arts. 2161, 2645 and 3053; Cox v. Baldwin, 1 La. 401; Thayer et al. v. Goodale, 4 La. 221; Baldwin v. Thompson et al., 6 La. 474; Banks A. Smith v. John Taylor, 14 La.Ann. 663; Succession of B. H. Dinkgrave, 31 La.Ann. 703–707; J. M. Seixas Syndic v. Alfred Gonsoulin et al., 40 La. Ann. 351, 4 So. 453.

The transaction between Dr. Harrell and plaintiff whereby the latter acquired the notes for less than the principal then due, did not discharge or extinguish the notes. Sec. 121 of the Act 64 of 1904 (N.I.L.) expressly so provides. It reads:

"Where the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent indorsements, and again negotiate the instrument * * *."

There are two exceptions to the rule expressed in this section, but neither applies to the facts of the present case.

█ Having acquired the notes in the manner above related, the endorsers had the unquestioned right to sue the maker thereon. Civil Code, Art. 3052.

█ It was held in Nolte et al. v. His Creditors, 7 Mart.,N.S., 9, that the endorser of an accommodation note is merely a surety. However, in some respects the

liability and rights of each are governed by different legal principles but for the purposes of the present case, there is no difference.

The question arises, "What is the measure of the maker's liability to his accommodation endorsers?" Is it the full balance due on the notes, or is it the amount they were forced to pay to prevent suit against them? The law leaves no uncertainty on this score. The maker may not be held to respond in principal for more than the endorsers have paid. This rule prevails in nearly all, if not all of the states of the Union, including our own, and in England. 118 A.L.R. 417 et seq. It is certainly supported by equitable considerations of the highest order.

Justice White, in the Succession of Dinkgrave, supra, commenting upon the rule, said:

"The contract of suretyship is essentially a beneficent one, and whilst the surety who paid was legally subrogated, he was so only to the extent of his actual and necessary payment. If he made an advantageous settlement the benefit of such payment was as much the principal's as his own. Indemnification and not profit is the measure of the surety's recourse against the principal, as taught by our law and the jurisprudence thereunder. * * * In fact such was the rule under the Roman law, whence the law of suretyship as existing in our Code has been in a large measure drawn."

This pronouncement is supported by an early line of decisions of the Supreme Court of this State, which include the following: Nolte et al. v. His Creditors, supra; Dorsey et al. v. His Creditors, 7 Mart.,N.S., 498; Toledano v. Gardiner, 2 La.Ann. 779; Pickett et al. v. Bates et al., 3 La.Ann. 627.

Defendants contend that plaintiffs, even if allowed recovery of the amount paid Dr. Harrell, are not entitled in addition thereto, to recover attorney's fee. We do not think this position tenable. They became the owners of the notes in question, under Sec. 121 of the N.I.L., with subrogation unto all the holder's incidental and accessory rights thereto, which included the mortgage security and the right to recover 10% attorney's fee stipulated, not only in the notes, but in the mortgage also.

We are aware of the line of decisions which hold that when a person, having an interest so to do, such as that of endorser or surety, discharges his own liability on an obligation by paying the holder the amount thereof or a lesser sum, such a transition takes place that as between such person and the one primarily bound thereon, the note ceases to be the primary obligation; that a personal action for reimbursement arises which may only be barred by the prescription of ten years. B. F. Linton v. S. W. Wikoff, 12 La.Ann. 878–880; Smith v. Taylor, supra; W. R. Ward v. D. B. Douglass, Sheriff, et al., 22 La.Ann. 463.

There are also cases holding that it is only where the person who pays off an obligation, who is not legally bound to do so, nor has interest in doing so, the effect of such payment is to extinguish the obligation with all accessory rights appertaining thereto; the ultimate effect being that the payor becomes an ordinary creditor of him who was primarily liable on the discharged obligation. David T. Weil v. Enterprise Ginnery & Mfg. Company, 42 La.Ann. 492, 7 So. 622; Aiken v. Robinson, 52 La. Ann. 925, 27 So. 134, 529.

We do not deem it necessary for a proper decision in this case to attempt to reconcile these apparently conflicting lines of decisions.

Even though it be conceded arguendo, that the notes, as such, ceased to exist as the evidence of a primary obligation when plaintiffs paid Dr. Harrell the $825, thereby liquidating their own liability thereon, yet they would have the right to recover this amount with interest and attorney's fee stipulated both in the mortgage and in the notes. After all is said on the subject, it was the payment of the debt which the notes evidenced and represented, the mortgage was executed to secure. The evidence of an obligation and the obligation itself are entirely different. Civil Code, Art. 1762; J. B. Beaird Corp. v. Johnson, La.App., 152 So. 789; Armato v. Ross et al., La.App., 170 So. 400.

The payment of interest on the debt and attorney's fee, if incurred, were secured by the mortgage as well as the principal.

The act of mortgage expressly stipulates therein: "The above described property to stand thus mortgaged, hypothecated and affected until the full, final and complete payment of the above described notes, with all interest, costs and attorney's fees, in the event of suit for collection."

It is shown that plaintiffs acquired the notes on April 30, 1937.

For the reasons herein given, the amount of the judgment appealed from is reduced to $825, with 8% interest thereon from April 30, 1937, plus 10% thereof as attorney's fee; and, as thus reduced and amended, said judgment is affirmed with costs.