## 30897. PHILLIPS v. HOPPER.

INGRAM, Justice.

Appellant Phillips prosecutes this appeal, pro se, from the judgment of the Superior Court of Tattnall County denying his application for a writ of habeas corpus and remanding him to the custody of the warden of Georgia State Prison at Reidsville. This court granted appellant's application to appeal that judgment.

In August, 1974, appellant was convicted of two counts of armed robbery and one count of aggravated assault. He received a sentence of five years for the assault and two sentences of life imprisonment for the armed robberies. His convictions and sentences were affirmed on appeal in *Phillips v. State,* 233 Ga. 800 (213 SE2d 664) (1975). In August, 1975, appellant filed a petition for writ of habeas corpus challenging the above convictions and sentences. Appellant is also serving three other life sentences imposed in 1963 for robbery offenses, but does not challenge those convictions and they are not in issue.

In denying appellant relief the Superior Court of Tattnall County held that the constitutional issues petitioner sought to raise concerning his arrest, the search of his car and the admission into evidence of his incriminating statement were decided adversely to him in his direct appeal and could not be relitigated in habeas corpus. See *Strozier v. Hopper,* 234 Ga. 597, 598 (1) (216 SE2d 847) (1975); *Brown v. Ricketts,* 233 Ga. 809, 810 (1) (213 SE2d 672) (1975). The habeas trial court also found appellant had failed to prove his allegation that the prosecutor knowingly solicited and used perjured testimony of two of appellant's three co-defendants in order to obtain appellant's conviction.

Appellant made three contentions in his application

to this court for appeal from the trial court's denial of habeas corpus relief: (1) the court erred by denying him the aid of Leon Phillips at the habeas corpus hearing. Leon Phillips is a non-lawyer inmate at Reidsville who helped appellant prepare his petition for writ of habeas corpus; (2) the court refused to allow appellant the right to inspect his trial transcript; and, (3) the court erred by refusing to call all of the witnesses appellant had sought to subpoena, because these witnesses were needed to support his allegation of perjury. We find no merit in the first and second grounds of appellant's claim, but remand on the third ground for additional findings by the trial court.

Under *Green v. Caldwell,* 229 Ga. 650 (3) (193 SE2d 847) (1972), appellant was not entitled to the assistance of lay counsel at his habeas corpus hearing. Appellant's contention that the trial court refused to allow him to inspect his trial transcript is also without merit, as there is nothing in the record or the habeas corpus hearing transcript which indicates that appellant ever requested his trial transcript.

Prior to the habeas hearing, appellant filed a "Motion to Subpoena" six witnesses, all of whom were prisoners in the Georgia State Prison system. Four of the prisoners were identified as inmates at Reidsville, while the addresses of the two others, Lamar Walker and Louis Freeman, were listed only as "State Board of Offender Rehabilitation." Subsequently, but also prior to the hearing, appellant filed an "Application for Writ of Habeas Corpus Ad Testificandum" and an "Affidavit in Support of Application for Writs of Habeas Corpus Ad Testificandum." In the application appellant stated, "Lamar Walker and Louis Freeman, two of petitioner's co-defendants, can give testimony as to how the prosecuting officials bargained with them to perjure their testimony for a lighter sentence in their own cases." Petitioner also stated that three of the other named prisoners could testify regarding the alleged solicitation of perjury. In his affidavit, appellant stated that he was not financially able to pay the cost of the production of these witnesses.

At the commencement of the hearing appellant

requested the court to order the six prisoners to be produced to give testimony on his behalf. The court's questioning of appellant disclosed that, of the two co-defendants appellant sought to subpoena, only Louis Freeman testified against him at his trial. A third co-defendant, Willie Gillespie, also testified against appellant at trial, but appellant did not wish to subpoena him because, according to appellant, this witness aided the prosecutor in suborning the perjury of the other witnesses. Nevertheless, appellant testified that all three co-defendants told him, after his conviction, that if he could get "back in court" they would tell the truth (according to appellant).

The habeas corpus court determined that only two of the Reidsville prisoners were actually served with the subpoenas which had been provided to appellant by the clerk of the superior court. These two were called to testify but they were unable to support appellant's allegations of perjury. The habeas court did not order any of the other prisoners to be produced at the hearing. In its order denying appellant relief, the habeas court stated in its findings of fact that "[t]he issue concerning the use of alleged perjured testimony was not raised by petitioner in his direct appeal. This court finds that by raising this issue at this point appellant is attempting to use habeas corpus as a substitute for appeal." However, in its conclusions of law the court ruled on the merits of the allegation, holding that, "Petitioner failed to prove that the testimony of his co-defendants was perjured."

The habeas court also held that appellant was not entitled to the compulsory process of witnesses on his behalf, citing *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973); *Snell v. Smith,* 228 Ga. 249 (184 SE2d 645) (1971); *Johnson v. Smith,* 227 Ga. 611 (182 SE2d 101) (1971), and that since he had failed to comply with Code Ann. § 38-2001 (c) by not filing a deposit to defray the expense of transporting the prisoner witnesses, he was not entitled to have the court issue a production order pursuant to Code Ann. § 38-2001 (a).

There does not appear to be any bar preventing the appellant from raising his perjury claim in habeas corpus proceedings. The subornation of perjury by the state in

order to obtain a conviction is a denial of a defendant's right to due process (see Mooney v. Holohan, 299 U. S. 103 (1935); Alcorta v. Texas, 355 U. S. 28 (1957); Napue v. Illinois, 360 U. S. 264 (1959). See also Brady v. Maryland, 373 U. S. 83 (1963)), and constitutes grounds for the writ. See Code Ann. § 50-127 (1). As indicated, the habeas court apparently did not base its decision on the theory that appellant's perjury claim is not cognizable in habeas corpus but ruled that appellant failed to prove it.

We agree with the trial court that "the law does not require the court to subpoena witnesses at the request of the petitioner for habeas corpus. *Neal v. Smith,* 226 Ga. 96 (6) (172 SE2d 684)." *Johnson v. Smith,* 227 Ga. 611, 614 (182 SE2d 101) (1971). See also *Snell v. Smith,* 228 Ga. 249, 250 (184 SE2d 645) (1971). However, those cases are not dispositive of the issue we must decide in this appeal.

Code Ann. § 38-2001 provides for the production of prisoners as witnesses "in any civil or criminal proceeding in any court of record in this state." Code Ann. § 38-2001 (c) provides that, "where the judge, after examining into the matter, determines that the prisoner's presence is required by the ends of justice and ... the party requesting it is financially unable to make said deposit, . . . expenses shall be taxed as costs of court." Consequently, when the habeas trial court received appellant's application for an order to produce these prisoners as witnesses at the habeas hearing, it was necessary for the court to determine whether appellant is financially unable to pay the expenses of having these prisoners produced as witnesses and whether the presence of the prisoners as witnesses "is required by the ends of justice." Appellant has the burden of satisfying the trial court that both of these conditions exist before he can secure an order requiring the production of the prisoners as witnesses and taxing the expenses thereof as costs of court. See *Reed v. State,* 119 Ga. App. 368 (5) (166 SE2d 900) (1969), and *Spurlin v. State,* 228 Ga. 2 (2) (183 SE2d 765) (1971). The trial judge must exercise a sound judicial discretion in determining whether the presence of the witnesses is "required by the ends of justice." In the exercise of his discretion, the trial judge may require this to be shown by

affidavits or depositions and these may also be used at the habeas hearing as primary evidence even though the witnesses' presence may not be required. See Code Ann. § 50-127 (7).

However, as we interpret the present order of the trial court, no determination was ever made pursuant to Code Ann. § 38-2001 (c) whether an order for the production of these prisoners as witnesses should or should not be granted. For this reason, the judgment below will be vacated and the case remanded for that determination to be made by the habeas court.

*Judgment vacated and remanded. All the Justices concur, except Jordan, J., who dissents.*

SUBMITTED MARCH 5, 1976 — DECIDED MAY 17, 1976 —
REHEARING DENIED JUNE 9, 1976.

King Henry Phillips, *pro se.*

*Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.

JORDAN, Justice, dissenting.

I would affirm the habeas court because we have consistently held that the trial court is not required to subpoena witnesses for a prisoner in a habeas corpus proceeding. See *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973); *Snell v. Smith,* 228 Ga. 249 (184 SE2d 645) (1971); and *Johnson v. Smith,* 227 Ga. 611 (182 SE2d 101) (1971). Neither is the state required to produce prisoners at a post-conviction habeas proceeding for use as witnesses by the applicant.

In 1956 when Code Ann. § 38-2001 was enacted the General Assembly could not have possibly foreseen the tremendous upsurge in the use of the writ of habeas corpus as a post-conviction remedy. At that time use of the writ in a post-conviction proceeding was generally considered to be a quasi-criminal proceeding. It was not until 1969 that this court clearly held that a habeas corpus proceeding "is not a criminal prosecution." *Croker v. Smith,* 225 Ga. 529 (169 SE2d 787) (1969). As late as

1970 this court was still not sure exactly how to categorize such a proceeding for we said, "Whatever may be the nature of a habeas corpus proceeding, it is not, strictly speaking, a criminal proceeding . . ." *Cash v. Smith,* 226 Ga. 318 (175 SE2d 10) (1970). We have continued to hold that a post-conviction habeas is "not a criminal proceeding." *Sims v. Caldwell,* 231 Ga. 377 (202 SE2d 70) (1973); *Hopkins v. Hopper,* 234 Ga. 236 (215 SE2d 241) (1975) and many other cases. We have clearly said what it was not but have never clearly said what it was. It seems to be in the nature of a hybrid, sort of like a mule.

In any event the enactment of Code Ann. § 38-2001 antedated the extensive use of the writ of habeas corpus as a post-conviction remedy. A careful reading of this Code section shows that Subsection (b) relates only to a "criminal proceeding," thus eliminating a post-conviction habeas proceeding. Subsection (c) provides for the production of a prisoner as a witness "by the *defendant* in a criminal proceeding, or by *either party* to a civil proceeding, . . ." (Emphasis supplied.) The use of the term "civil proceeding" in this statute could not have been intended to include a post-conviction habeas corpus proceeding.

A review of the history and language of Code Ann. § 38-2001 leads clearly to the conclusion that the General Assembly did not intend for the provisions of this Code section to be available to an applicant for the writ of habeas corpus in a post-conviction proceeding.

I respectfully dissent.