**R. J. ENSTROM CORPORATION,**
Appellant,

v.

**INTERCEPTOR CORPORATION and United States of America, Appellees.**

**No. 74-1561.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 20, 1975.

Decided Aug. 14, 1975.

James Thomas Lenhart, Washington, D. C. (Phillip D. Bostwick, and Shaw, Pittman, Potts & Trowbridge, Washington, D. C., and Ben L. Burdick, Clyde A. Muchmore, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., with him on the brief), for appellant.

Mark A. Dombroff, Atty., Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., William R. Burkett, U. S. Atty., John G. Laughlin, Atty., Dept. of Justice, and Donald E. Jose and Robert W. Katz, Attys., Dept. of Justice, of counsel, with him on the brief), for appellee, United States of America.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This litigation arises out of an aviation accident which resulted in the total loss

of an "Interceptor 400" aircraft, owned by plaintiff, R. J. Enstrom Corporation. The airplane was manufactured by Interceptor Corporation, a defendant, and given a "type certificate" by the Federal Aviation Administration. The plane was "ditched" in Santa Monica Bay in California following a "flame out" of its turboprop engine asserted to have been caused by fuel starvation.

Enstrom, a Michigan corporation, filed this action in the Western District of Oklahoma. Count 1 of the complaint asserts a diversity claim against defendant, Interceptor Corporation, a Delaware corporation, which designed, manufactured and sold the plane in Oklahoma. This cause of action alleged defective design. Count 2 of the complaint is a federal tort claim against the United States for negligence by the FAA in issuing a "type certificate" for the aircraft (49 U.S.C. § 1423) having a defectively designed and manufactured fuel system. Enstrom asks for damages in the amount of $150,000 on each count.

Plaintiff had the plane insured in the amount of $150,000 by Lloyds, London and other insurance carriers. In March 1972, the insurance carriers transferred $104,528.59 to Enstrom under the terms of a "loan receipt agreement." This was described as an "interim loan" and is repayable only to the extent of any net recovery by Enstrom, the insured, for its "loss or damage." As security for such repayment, Enstrom pledged its claims against any parties causing the loss and damage, and agreed to sue such parties in its own name, but at the expense of the insurers and under the cooperative control and direction of the insurers.

On July 5, 1972, Enstrom made a claim for itself in a "claim letter" to the FAA pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2675(a). The FAA denied the claim, stating that no liability was indicated. Apparently concerned about a case in Ohio deciding the consequence of funds remitted under a loan receipt and the subrogation issue, Enstrom sent a second claim letter to the FAA where-

in it stated that while Enstrom's position continued to be that it was the real party in interest, and that it had fully complied with 28 U.S.C. § 2675(a), it nevertheless wanted this letter to be considered as a claim by the insurance carriers. The FAA replied to this second "claim," and denied it. One reason given for denial was that such "springing" administrative claims are not authorized by statute, are not presently operative, and are a clear subterfuge of the statute of limitations. Another reason given was the second letter was not a timely amendment under 28 C.F.R. § 14.2(b), and in any event ". . . we have taken final agency action on [the first claim] . . . ."

A third reason for denial was as follows:

"The named insurance companies are not the proper parties to present this claim under the Justice Department Regulations. The regulations (28 C.F.R. § 14.3(d)) state that an insurer may file a claim for a loss 'wholly compensated by [the] insurer with the rights of a subrogee.' Since it is your stated position that the $104,528.59 given to Enstrom was a loan and not a payment for the loss, the insurers do not meet the above requirements and cannot file a claim."

On January 15, 1974, one day after the two-year statute of limitations had run, the Government served Enstrom with a motion to dismiss for lack of subject matter jurisdiction in that Enstrom was not the real party in interest, and the insurers had failed to make a claim under 28 U.S.C. § 2675(a). Interceptor joined in the Government's motion. The trial court granted dismissal in a one-sentence order ". . . upon the ground that the named Plaintiff is not the real party in interest." Enstrom's motions for amendment of the order to allow substitution of its insurers as party plaintiff, and for leave to amend its complaint accordingly, were denied. Plaintiff Enstrom has appealed.

Enstrom argues that the loan receipt agreement is primarily a device by which plaintiff seeks to prevent disclosure to a jury of the fact it is insured.

The Government urges that, notwithstanding its name, the loan receipt is an unconditional payment in satisfaction of the insurers' liability for Enstrom's loss. As such, the Government continues, the loan receipt is a "subterfuge or a sham to avoid subrogation," and urges that it effectively denies the Government its right to be sued by the real party in interest under Rule 17(a).

As for Enstrom's argument concerning the jury, the Government simply states Enstrom is not entitled to a jury on its federal tort claim. Interceptor has made no appearance on this appeal.

Both plaintiff Enstrom and codefendant Interceptor have demanded a jury. As yet neither defendant has moved to sever. As the case now stands, dismissal has been ordered as to both defendants.

The question then is whether by the terms of the loan receipt, the insurer became the real party in interest. We have dealt with this question before in *Tyler v. Dowell, Inc.*, 274 F.2d 890 (10th Cir.). *See also* 13 A.L.R.3d 42.

The Supreme Court in *Luckenbach v. McCahan Sugar Refining Co.*, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, considered a loan agreement similar to the one here concerned. The Court held that it was valid as a loan, a proper business transaction, and the insured remained the real party in interest. The Court said that the libel there considered ". . . was filed in the name of the shipper [the insured], but for the sole benefit of the insurers, through their proctors and counsel, and wholly at their expense." The Court continued by saying that such agreements had been "a common practice" for years. Thus the Court construed the agreement to be a valid loan. The *Luckenbach* case has been widely cited and followed in the state and federal courts. Such cases include those where the "real party in interest" under Rule 17(a) is the basis for the challenge.

*See Sanders v. Liberty Mutual Ins. Co.*, 354 F.2d 777 (5th Cir.); *Celanese Corp. of America v. John Clark Industries, Inc.*, 214 F.2d 551 (5th Cir.); *Augusta Broadcasting Co. v. United States*, 170 F.2d 199 (5th Cir.); *Merriman v. Cities Service Gas Co.*, 11 F.R.D. 165 (S.D.Mo.), and *Perrera v. Smolowitz*, 11 F.R.D. 377 (E.D.N.Y.). The most frequently cited holding to the contrary is *City Stores Co. v. Lerner Shops of District of Columbia, Inc.*, 133 U.S.App.D.C. 311, 410 F.2d 1010. The opinion in *Celanese Corp. of America v. John Clark Industries, Inc.*, 214 F.2d 551 (5th Cir.), refers to the fact of insurance being disclosed to the jury.

We consider the opinion in *Luckenbach v. McCahan Sugar Refining Co.*, considered above, to be dispositive of this element of the case, and thus hold that the "loan receipt" was effective as such and did not displace the insured as the real party in interest under Rule 17(a).

The matter of subrogation is another aspect of this issue relating to the loan receipt. It is a question of substantive law, that is, whether or not the receipt evidences an outright payment by the carrier to the insured on the policy and accomplishes subrogation. *See United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, and *Gas Service Co. v. Hunt*, 183 F.2d 417 (10th Cir.). We have considered the application of local law on the subject in *Western Spring Service Co. v. Andrew*, 229 F.2d 413 (10th Cir.), and in *Tyler v. Dowell, Inc.*, 274 F.2d 890 (10th Cir.).

The loan receipt now before us was acknowledged in Massachusetts, although Enstrom obviously will perform its terms by suit in Oklahoma. The authorities demonstrate that both Massachusetts and Oklahoma expressly follow *Luckenbach* in upholding the validity of loan receipts as loans. *National Shawmut Bank of Boston v. Johnson*, 317 Mass. 485, 58 N.E.2d 849; *C & C Tile Co. v. Independent School District No. 7 of Tulsa County*, 503 P.2d 554 (Okl.).

Thus the "loan receipt" was valid as such, and the insured remained the real

**1220**

party in interest under Rule 17(a), Fed. R.Civ.P.

The dismissal by the trial court was in error. The case is reversed and remanded for further proceedings.