**Robert W. SEE et al., Plaintiffs,**

v.

**EMHART CORPORATION et al., Defendants.**

**No. 76CV554–W–4.**

United States District Court, W. D. Missouri, W. D.

Dec. 12, 1977.

---

Glen McCann, Kansas City, Mo., for plaintiffs.

John C. Risjord, Niewald, Risjord & Waldeck, P. C., Kansas City, Mo., for defendants.

## ORDER DENYING MOTION FOR JOINDER OF NECESSARY PARTY

ELMO B. HUNTER, District Judge.

This cause is now before the Court on defendant Emhart Corporation's Motion for Joinder of Pacific Indemnity Company, plaintiffs' insurer, as a necessary party. By virtue of certain losses suffered by plaintiffs-insureds, Pacific Indemnity entered into certain loan receipt agreements with the insureds. The form utilized by the Pacific Indemnity for this purpose reads as follows:

LOAN RECEIPT

DATED: _____, 19____

$_____

RECEIVED FROM Pacific Indemnity Co. the sum of _____ Dollars as a loan, without interest, under Policy No. _____, repayable only in the event and to the extent that any net recovery is made by [the insured]__, from any person, corporation, or party, for loss or damage for which this Company may be liable, occasioned to _____ on or about the _____ day of _____, 19____.

THE UNDERSIGNED AGREE(S) to deliver to the insurer herewith, all documents necessary to show his interest in said property and agree(s) to present claim promptly and, if necessary, to commence, enter into, and prosecute suit against such person, corporation, or party, who may be responsible therefor, with all due diligence, in the name of the undersigned, but at the expense, direction, and control of said Pacific Indemnity Co.

_____

In the Presence of:

_____

Defendant Emhart argues that "[b]y virtue of the payments made to plaintiffs by Pacific Indemnity Company pursuant to its policy of insurance, said insurer is subrogated to all right, title, and interest of plaintiffs, or the corporation which they represent, in the subject matter of this action and is the real party in interest, at least to the extent of the payments made by the company pursuant to said policy of insurance, requiring its joinder as a necessary party under Rule 19 of the Federal Rules of Civil Procedure." The validity of this argument will now be examined.

It must first be recognized that in diversity cases, such as the instant one, "state substantive law is consulted to determine whether an assignee qualifies as a real party in interest under Rule 17(a)." *Dubuque Stone Products Co. v. Fred L. Gray Co.,* 356 F.2d 718 (8th Cir. 1966). And, it is beyond question that, were this matter now before the Missouri courts, joinder of the insurer would not be required. *State Farm Mutual Automobile Insurance Company v. Jessee,* 523 S.W.2d 832 (Mo.App.1975). This does not, however, end the inquiry, for it must still be determined whether the results reached by the Missouri courts have been the product of that State's substantive law or merely the product of some procedural mechanism for enforcing substantive rights. If the former, Missouri law is binding on this Court; if the latter, federal law controls.[1]

Defendant Emhart urges that the question now before the Court is controlled by *Gas Service Company v. Hunt,* 183 F.2d 417 (10th Cir. 1950) and *Du Vaul v. Miller,* 13

F.R.D. 197 (W.D.Mo.1952). Those cases, however, involved subrogation agreements whereby the insurer made payment to its insured of the insured's loss and thus became subrogated, to the extent of its payment, to the insured's rights against the tortfeasor. The loan receipt utilized by the insurer in this case, however, does not involve payment and subrogation. In fact, one of the insurer's major purposes in making a loan rather than a payment is "to avoid subrogation and thus to permit the insurer to avoid becoming a formal party to an action against a tortfeasor or other person liable for the loss or damage." 44 Am. Jur.2d, Insurance, § 1824, p. 751 (1969).[2]

Under Missouri law, the loan receipt mechanism does not constitute an assignment, payment and satisfaction of the insurer's liability to the insured, nor a subrogation agreement; rather, it constitutes a loan, pure and simple, repayable upon the occurrence of certain conditions. *State ex rel. Bartlett & Co., Grain v. Kelso,* 499 S.W.2d 579 (Mo.App.1973).[3] Because it is

1. As stated in 6 Wright & Miller, Federal Practice and Procedure: Civil § 1544, pp. 647–48 (1971):

To determine whether the requirement that the action be brought by the real party in interest has been satisfied, the court must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief. In light of the Supreme Court's decision in *Erie Railroad Company v. Tompkins,* state law will control in an action based on diversity of citizenship for purposes of ascertaining who possesses the original cause of action or deciding a question relating to assignability. The forum state's procedural statute or rule defining the real party in interest concept is not applicable, however, because it only governs who may sue in the state courts; under Rule 17(a), the federal courts are concerned only with that portion of state law from which the specific right being sued upon stems.

2. This purpose is not, however, the only one. In fact, the loan receipt device originated in the struggle between common carriers and insurers to shift the burden of a loss upon the other. Carriers would insert in their bills of lading that they were to have the benefit of any insurance carried by the shipper, and the shippers' insurers countered by inserting in their policies a provision that the insurance would not cover any loss for which the carrier was liable or

where the bill of lading provided that the carrier was to have the benefit of any insurance on the cargo. Faced with such opposing provisions, a shipper whose cargo had been damaged would be out of funds until final adjudication of an action against the carrier determining whether the carrier was liable. To avoid depriving the shipper of the use of funds pending such determination and to keep alive the carrier's liability, the insurers devised the loan receipt. *See* 44 Am.Jur.2d, Insurance, § 1824, p. 751 (1969); Annot., 13 A.L.R.3d 42, 48, § 2 (1967).

3. Defendant Emhart cites *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508 (6th Cir. 1974) to support its argument that the loan receipt agreement involved in the instant case should be viewed as a subrogation agreement. The Court, at 511, stated: "In the view that we take of this case, we need not decide whether the effect of the loan receipt arrangement is governed by state or federal law. It is conceded that under the law of Ohio payment pursuant to a loan receipt is considered outright payment and does not avoid subrogation of the insurer. . . . In our opinion the federal courts should follow the same rule. Thus we would reach the same result on the subrogation issue regardless of whether we apply the State law of Ohio or federal law." However, Missouri, unlike Ohio, treats the loan receipt contract

the Missouri rule that, "if the insurer's rights are simply those of subrogation, then legal title remains in the insured and he retains the exclusive right to bring the suit," *Jessee, supra,* at 834, and because the insurer who receives a loan receipt from his insured does not have the rights of a subrogee, it is difficult for this Court to see what possible substantive right the law of Missouri confers upon the loan receipt insurer against the alleged tortfeasor.[4]

■ Having no substantive rights against the tortfeasor under Missouri law,[5] the insurer cannot be deemed the real party in interest in this diversity case. As observed in *Hughey v. Aetna Casualty and Surety Company,* 32 F.R.D. 340 (D.Del. 1963): "A party cannot be 'the real party in interest' in a diversity case if it has no substantive cause of action under applicable State law."

■ This Court's conclusion that defendant Emhart's motion must be denied is consistent with the results reached by other Courts which have considered the issue. In *R. J. Enstrom Corporation v. Interceptor Corporation,* 520 F.2d 1217 (1975), the Tenth Circuit considered the question of "whether by the terms of the loan receipt, the insurer became the real party in interest," and concluded that "the 'loan receipt' was effective as such and did not displace the insured as the real party in interest under Rule 17(a)." *Id.,* at 1219. *See also Watsontown Brick Co. v. Hercules Powder Co.,* 201 F.Supp. 343 (M.D.Pa.1962). Both the *R. J. Enstrom* and *Watsontown Brick* decisions support this Court's conclusion that whether an arrangement between an insurer and insured constitutes a "payment/subrogation" situation or a "loan/no subrogation" situation is a matter controlled by state substantive law. As earlier expressed, the law of Missouri is clear that the loan receipt involves a pure loan, not payment, and that, therefore, no subrogation occurs.

The conclusion reached by this Court is further strengthened by the language contained in *Dixey v. Federal Compress and Warehouse Company,* 132 F.2d 275 (8th Cir. 1942), where the Court analogized the insured's position in a loan receipt situation to that of a trustee of an express trust. And, as stated in Rule 17(a), F.R.Civ.P.:

> [A] trustee of an express trust . . . may sue in his own name without joining with him the party for whose benefit the action is brought . . .

As this Court stated in *Merriman v. Cities Service Gas Co.,* 11 F.R.D. 165, 165–66 (W.D.Mo.1951):

> On the motion to require the joining of Atlas Mutual Insurance Company as a party plaintiff, it appears from an examination of the briefs and a competent document that the plaintiffs did have insurance, and that a part of their claimed loss has been paid. However, it was paid by the insurance company in the way of extending a loan to cover in part said

---

as the basis of a true loan, and not as payment. As this difference is clearly one of substantive law (see note 5, below), this Court must be guided by Missouri law.

4. Of course, the insurer is not without substantive rights as to the insured, for "it has been uniformly held that where an insured has been paid by his insurer under a customary loan receipt, the insured's subsequent independent compromise and settlement of his claim against the person causing the loss is a breach of his contract with his insurer and renders him liable for repayment to the insurer of the amount paid him under the loan receipt." Annot., 13 A.L.R.3d 42, 101, § 11 (1967).

5. That the question of whether the loan receipt arrangement constitutes a payment or a true loan is one of substantive law was determined

in *Rosenfeld v. Continental Building Operating Company,* 135 F.Supp. 465, 470 (W.D.Mo. 1955), where the Court stated: "I am, therefore, of the opinion that the *substantive* law of New York upon the question . . . is that if the policy contains provisions authorizing the insurer to settle its liabilities with the insured by a loan, the loan is not payment, but otherwise it is payment. Here, there is no provision in the policy authorizing the insurer to settle its liabilities by loan, and, therefore, under the controlling law of New York, the 'loan' was payment, and, under the holding of the Supreme Court in *United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, the insurer is the real party in interest and must prosecute the suit in its own name" [emphasis added].

loss. By a document submitted the insurance company quite clearly has authorized the plaintiffs to bring this action and a part recovery, if any, would inure to the benefit of the insurance company. Under such circumstances the plaintiffs are empowered under Rule 17, Federal Rules of Civil Procedure, 28 U.S.C.A., to maintain the action in their names.

Paragraph (a) of said Rule 17 particularly provides that, "a trustee of an express trust" may bring suit in his name without joining the beneficiary. Such are the rulings in Missouri, as well as the holdings of the federal courts. . . . The act of the insurer in extending a loan is a practice approved by the courts.

It would follow that the several motions above discussed should be and will be overruled.

The Court considers the above decisions to be both binding and persuasive. For the above-stated reasons, therefore, it is hereby

ORDERED that defendant Emhart Corporation's Motion for Joinder of Necessary Party be, and it is hereby, denied.