Caryl G. BROWN, Individually and Caryl G. Brown, Guardian of the Property of Stacy M. Brown and Patrick J. Brown, Minors

v.

**INTER–OCEAN INSURANCE COMPANY.**

No. C76–626A.

United States District Court, N. D. Georgia, Atlanta Division.

Court Order June 3, 1977.

On Bill of Costs July 25, 1977.

**952**

Stephen F. Carley, Tarver, Stowers, Roane & Carley, Atlanta, Ga., for plaintiff.

Tommy T. Holland, Carter, Ansley, Smith & McLendon, Atlanta, Ga., for defendant.

## COURT ORDER

MOYE, District Judge.

This is a diversity action for breach of contract brought by Caryl G. Brown, a Georgia resident, individually and as guardian of her two minor children, against Inter-Ocean Insurance Company (Inter-Ocean), an Indiana corporation with its home office in Ohio. The case is presently before the Court on defendant's motion for summary judgment, plaintiff's motion for summary judgment, plaintiff's motion for leave to file an amended complaint, and plaintiff's motions to compel answers to interrogatories and other discovery.

On or about May 20, 1975, Jennings C. Brown, Jr., the deceased ex-husband of the plaintiff and a Florida resident, made an application to Inter-Ocean through Duston Wolters, a broker in Gainesville, Florida, for a $100,000 life insurance policy. At that time Jennings Brown paid $360 to Mr. Wolters, either as full or part payment of the first year's premium. Plaintiff Caryl Brown and her two children were the beneficiaries of the policy. On May 29, 1975, Jennings Brown died in a plane crash in Tennessee. Plaintiff notified Inter-Ocean of Mr. Brown's death and made demand for payment under the policy. Defendant refused to pay, but has tendered the $360 payment to the estate of Mr. Brown, which tender has been refused.

Plaintiff contends that the policy was in effect on May 29, 1975, and that she and her children are entitled to payment as beneficiaries and to punitive damages due to Inter-Ocean's bad faith refusal to pay the face amount of the policy.

Defendant contends that it did not accept Mr. Brown's application for insurance, that it did not issue a policy on his life, and as a result no policy was in force at the time of his death.

Georgia follows the "center of gravity" approach in determining which state's law to apply when the validity, form and effect of a contract are at issue. *Eldon Industries, Inc. v. Paradies and Company*, 397 F.Supp. 535 (N.D.Ga.1975); Restatement (Second) of Conflicts § 188 (1971). Under that approach Florida law governs the contractual aspects of this case in that Florida was the place of negotiation of the alleged contract between the agent and the insured, was the state of residence of the proposed insured, and would have been the state of delivery of the contract. Florida law also governs the agency relationship between the insurer and its agents in that Florida is the state which has the most significant relation to the parties and the transaction in this case. Restatement (Second) of Conflicts § 291.

## I. *Motions for Summary Judgment*

Inter-Ocean claims that the $360 which Mr. Brown paid Mr. Wolters was a deposit to be applied toward payment of the first year's premium and that the application, read and signed by Mr. Brown, provided: " . . . The Company shall have no liability whatsoever other than for the return of such deposit, unless and until a contract or policy has been issued and delivered and the first premium is paid during the lifetime of the Proposed Insured." Defendant asserts that the application was received in its home office in Ohio only two days prior to Mr. Brown's death. Although Inter-Ocean was in the process of gathering background information on Mr. Brown, the life insurance policy had not been approved by May 29 nor was it approved subsequently.

Plaintiff claims that the $360 represents full payment of the first year's premium (see plaintiff's exhibit, letter of Duston Wolters to Jennings Brown) and that on or before May 28, 1975, Inter-Ocean received the information necessary to complete Mr. Brown's application and issued a policy on the life of Jennings C. Brown, Jr., in the amount of $100,000 with $20,000 accidental death. Plaintiff notes a variance between the language of the application for insurance and the language of the receipt Mr. Brown was given when he paid $360. The receipt does not require *delivery* of the policy to the insured as a condition of Inter-Ocean's liability under the policy. Plaintiff argues that once Inter-Ocean's Ohio office issued the policy on or about May 28, 1975, it was in force from that date. Plaintiff points to the "single case agreement" that was executed between Inter-Ocean and Duston Wolters on May 28, 1975, providing for payment of Wolter's commission on the policy as support of the existence of the insurance policy. According to the deposition of Mary Ann Overholt, corporate counsel and assistant secretary for Inter-Ocean, usual company procedure is that a single case agreement is not executed until a policy is issued. (See pages 17, 19 and 20 of Mary Ann Overholt's deposition.) Plaintiff also argues that under Inter-Ocean's normal procedure the letter "L" is placed in front of the numbers on the file assigned to an individual's application when an application becomes a policy (see page 26 of deposition of Mary Ann Overholt) and that an "L" was used in referring to Jennings Brown's file. Plaintiff further contends that even if Inter-Ocean did not issue an insurance policy, Inter-Ocean was bound by the representations of Duston Wolters and Sam Holloway, agents of Inter-Ocean, to Jennings Brown that he was covered by defendant since he had "passed" his medical examination.

Defendant Inter-Ocean contends that it did not receive Jennings Brown's application for life insurance until May 28, 1975, two days before his death (see deposition of Stewart Murray), and that on May 30, 1975, his file lacked a credit report from Brown's last place of residence and an inspection report concerning Brown's character. Although Mr. Murray testified that in his position as the supervising underwriter for Inter-Ocean he had the authority to issue a policy to Brown without waiting for the above reports, he testified that he did not make such a decision. According to his deposition the file was incomplete on May 30, 1975, and shortly thereafter Inter-Ocean learned of Brown's death, so that Inter-Ocean made no other efforts to process Brown's application.

A determination that Inter-Ocean issued a policy to Jennings Brown depends on the single case agreement and the use and effect of the letter "L" in front of the numbers on Jennings Brown's application. Ms. Overholt testified regarding normal company procedure regarding the single case agreement but she continued that in this instance it was executed due to clerical error. (See p. 21 of deposition.) Plaintiff has not presented evidence to dispute the testimony of Ms. Overholt that the single case agreement was issued due to clerical mistake. Likewise, Ms. Overholt offered testimony as to the normal use of the letter "L" in front of the numbers on a life insurance application but gave further evidence concerning Jennings Brown's particular case. She testified that a clerical person who was not aware of the details of company procedure could use the application number L2119342 without realizing that a policy had not been issued and that such a clerical error occurred with Jennings Brown's application. This mistake would explain the use of the letter "L" on the single case agreement and in Duston Wolters' and Stewart Murray's correspondence concerning the application. (See deposition of Mary Ann Overholt, p. 21.) Plaintiff has not produced evidence to dispute this testimony. Consequently, neither the language of the single case agreement, "Policy No. L2119342 has been issued," nor the use of the letter "L" provides evidence to support plaintiff's contentions. In short, plaintiff has not presented evidence which raises *material* issues of fact in this regard.

Plaintiff alternatively contends in her motion for summary judgment that even if a policy were not issued to Jennings Brown, Inter-Ocean is bound by the representations of Duston Wolters and Sam Holloway to him that he was covered by the policy.

▇▇▇ Under Florida law Wolters and Holloway were agents of Inter-Ocean, in that Inter-Ocean supplied them with application forms and accepted insurance business from them. Fla.Stat.Ann. § 626.-746(3); *Russell v. Eckert*, 195 So.2d 617 (Fla.App.1967). The acts of Wolters and Holloway as statutory agents are binding on Inter-Ocean unless Jennings Brown knew of the limitations on their actual authority or unless the circumstances of the transaction put him on notice to inquire as to their actual authority. Appleman, *Insurance Law and Practice*, Vol. 16, § 8676, quoted in *Hughes v. Pierce*, 141 So.2d 280, 282 (Fla.App.1961); *Fidelity and Casualty Co. of New York v. D. N. Morrison Construction Co.*, 116 Fla. 66, 156 So. 385 (1934). Although determination of an agent's apparent authority may in some cases be a question of fact, *Hughes v. Pierce, supra,* an agent cannot bind an insurer by contracting to issue a policy when the written application expressly states that the agent cannot so contract. *Murphy v. John Hancock Mutual Life Insurance Co.*, 213 So.2d 275 (Fla. App.1968). The application signed by Jennings Brown expressly provides that "no agent shall have the right to make, alter, modify, or discharge any contract or policy issued on the basis of this Application . . ." Jennings Brown was thereby put on notice to inquire as to the actual authority of Wolters and Holloway, and Inter-Ocean is not bound by their representations. It is consequently unnecessary to determine whether Wolters or Holloway actually represented to Brown that he was covered by insurance effective on the date of application.

▇▇▇ Inter-Ocean supports its motion for summary judgment with the testimony of Stewart Murray that Jennings Brown's application file was incomplete on May 30, 1975, the day after Mr. Brown's death, and that Inter-Ocean had issued no policy to Mr. Brown prior to his death. (See deposition of Stewart L. Murray, pages 58–61). Plaintiff has presented no evidence to show that Mr. Brown's file was in fact complete or that the inspection and credit reports had been received before May 30, 1977. Other than the single case agreement and the company practice of using the letter "L" to designate life insurance policies, plaintiff has not produced evidence to contest Mr. Murray's testimony that he did not issue a policy to Jennings Brown. As discussed

above, Mary Ann Overholt's testimony explains both of these items of evidence, and plaintiff has not disputed her testimony. Defendant's motion for summary judgment is accordingly GRANTED and plaintiff's motion for summary judgment is DENIED.

## II. *Plaintiff's Motion to Amend*

■ Pursuant to Fed.R.Civ.P. 15(a) plaintiff requests leave to amend her complaint to add Count II, alleging grounds for reformation of the application for the life insurance and related documents. The amended complaint asks the Court to reform the documents to effectuate the intentions of the parties that insurance on Jennings Brown's life be in full force and effect from the time he executed the application and delivered $360 to defendant's agent. If such insurance was not in effect, plaintiff alleges that this was the result of either mutual mistaken belief of the parties or Brown's unilateral mistaken belief induced by the fraud and misrepresentation of Inter-Ocean through its agents.

Defendant contends that the amended complaint fails to state a claim upon which relief can be granted, that there is no evidentiary basis for plaintiff's allegations, and that the motion should accordingly be denied.

Inasmuch as Inter-Ocean is not bound by the representations of its agents Duston Wolters and Sam Holloway, as discussed above, there are no grounds upon which to base reformation of Jennings Brown's application for life insurance. Plaintiff's motion to amend is accordingly hereby DENIED.

## III. *Plaintiff's Motions to Compel*

■ Plaintiff moves the Court to compel Inter-Ocean to answer questions propounded to its employee, Mary Ann Overholt, on January 4, 1977, regarding other lawsuits pending against Inter-Ocean. Plaintiff further moves the Court, pursuant to Fed.R. Civ.P. 37(a), to compel Inter-Ocean to answer interrogatories filed March 15, 1977.

Inasmuch as Inter-Ocean's motion for summary judgment is granted, any further inquiry into Inter-Ocean's normal practices and procedures for processing insurance applications and issuing policies is unwarranted. Plaintiff's motions to compel are therefore DENIED.

In summary, plaintiff's motion for summary judgment is hereby DENIED; defendant's motion for summary judgment is hereby GRANTED; plaintiff's motion to amend is hereby DENIED; and plaintiff's motions to compel are hereby DENIED.

SO ORDERED, this 2 day of June, 1977.

## ON BILL OF COSTS

■ This case is presently before the Court on the defendant's bill of costs and plaintiff's objections thereto. The defendant requests assessment against plaintiff of the reporting costs of the depositions of Caryl G. Brown, Jay D. Jervey, J. Duston Wolters, Sam Holloway, Stewart Murray, Mary Ann Overholt, and James Wernke. The costs involved total $404.52. The attorney for defendant certifies that the costs are the true charges assessed and that such charges were necessarily incurred in the case.

The statute governing this issue is 28 U.S.C. § 1920(2), which provides: "A judge or clerk of any court of the United States may tax as costs . . . (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case . . . ." This wording has been applied to include transcripts of depositions which the Court finds were necessary for use in the case. *United States v. Kolesar*, 313 F.2d 835 (5th Cir. 1963).

This case was decided on a motion for summary judgment. The Court relied heavily on the depositions involved in reaching its decision and therefore determines that said depositions were necessarily obtained. Plaintiff does not argue that the depositions were not necessarily obtained, but instead requests that the Court not assess costs against plaintiff based on "the equities in the matter". Such argument is not persuasive. Accordingly, defendant's

Bill of Costs is hereby ORDERED ALLOWED in the amount of $404.52.