## 54861. LIBERTY MUTUAL INSURANCE COMPANY v. ALSCO CONSTRUCTION, INC. et al.

WEBB, Judge.

Hendry Corporation in doing certain road construction rented from Alsco Construction, Inc. and John W. Alford some equipment. The latter also furnished the operating personnel for the equipment, who were paid, however, by Hendry. As a part of the rental and personnel arrangement, Alford executed and delivered to Hendry the following agreement: "I, John Alford, title Pres. of Alsco Construction, acknowledge that the operators, oilers and any other of my people you are carrying on your payroll while they are operating, serving and attending my equipment are my own personnel and I assume full responsibility for all their actions while on Hendry Corporation, I-95-Bryan County, Ga. work and especially as regards safe working conditions and the safety, protection, maintenance, care and general operation of my equipment. I accordingly hold Hendry Corporation and all other persons, firms or corporations harmless and free of liability for injury to or death of any person or persons and for loss of or damage to my equipment while working for you on above project under our equipment rental agreement even though my personnel are carried on Hendry Corporation payroll which I agree is for administrative purposes only."

While operating Alsco's equipment for Hendry, two workers were killed and Liberty Mutual as insurer for Hendry was required to pay workmen's compensation benefits to their dependents. There was no contention that the deaths were brought about by any negligent or wrongful acts of Hendry. Liberty Mutual, contending that it was subrogated to the rights of Hendry, seeks indemnity from Alsco and Alford based upon the foregoing "hold harmless" agreement. The case was submitted to the trial court on a "stipulation of facts" and the court entered judgment for Alsco and Hendry. Upon

appeal we remanded "with direction that the trial court vacate the judgment, cause appropriate findings of fact and conclusions of law to be made, and enter a new judgment. . ." *Liberty Mut. Ins. Co. v. Alsco Const. Co.,* 139 Ga. App. 786 (229 SE2d 559) (1976).

On remand the judgment was vacated, the case was again tried without a jury, and the court entered its judgment for Alsco and Alford. The trial court in denying Liberty Mutual's claim concluded that (1) the insurer had no right to subrogation; (2) a "stipulation" entered into before the Workmen's Compensation Board was a settlement of all claims between Liberty Mutual on the one part and Alsco and Alford on the other part as to the dependents of one of the deceased operators; and (3) the indemnity agreement was to be strictly construed in favor of the indemnitor. Liberty Mutual excepts to each of these three grounds, and on appeal enumerates them as errors.

1. Did Liberty Mutual have the right to be subrogated to the position of its insured, Hendry?

The trial court concluded, "Here the plaintiff's liability for benefits to the dependents of the deceased employees of Hendry Corporation was based on the policy of insurance and the Workmen's Compensation Act, the death of the employees being merely one of several conditions precedent to that contractual liability. Strictly speaking, the plaintiff was not liable 'for injury to or death of any person' within the terms of the indemnity agreement, but was liable only upon its own purely contractual undertaking to pay certain benefits pursuant to the policy and the Act."

Subrogation is a legal as well as an equitable right. It is "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor. The substitute is put in all respects in the place of the party to whose rights he is subrogated. The doctrine is of equitable origin and benevolence. It is founded upon the dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. This right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend

upon the act of the creditor, but may be independent of both creditor and debtor. . . The courts incline rather to extend than restrict the principle." *Cornelia Bank v. First Nat. Bank of Quitman,* 170 Ga. 747, 750 (154 SE 234) (1930); *Argonaut Ins. Co. v. C & S Bank,* 140 Ga. App. 807, 810 (232 SE2d 135) (1976).

"Subrogation will arise only in those cases [1] where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would be bound to pay, or [2] where he has some interest to protect, or [3] where he advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor." *McCollum v. Lark,* 187 Ga. 292 (2) (200 SE 276) (1938); *Lee v. Holman,* 182 Ga. 559, 562 (186 SE 189) (1936); *Gilbert v. Dunn,* 218 Ga. 531, 533 (128 SE2d 739) (1962).

How do these three conditions apply, if at all, to this case? As to the first, Alsco and Alford became indebted to Hendry under the hold harmless agreement when the dependents of the deceased workers made valid claims under workmen's compensation laws upon Hendry. Secondly, Liberty Mutual paid the workmen's compensation claimants to protect its interest under the insurance policy as carrier for Hendry. Lastly, the insurance carrier was entitled to be subrogated to Hendry when it was required to pay according to the terms of the insurance policy. The policy itself provides as follows: "Subrogation— In the event of any payment under this policy, the company shall be subrogated to all rights of recovery therefor of the insured and any person entitled to the benefits of this policy against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights." Thus all three of the requisites set forth in *McCollum* and *Lee,* supra, were met even though any one of the three was sufficient.

Alsco and Alford argue that Code Ann. § 114-607[1]

---

[1] "No policy or contract of insurance shall be issued unless it contains the agreement of the insurer or insurers

limits the insurer's right of subrogation. We do not construe this provision to be a limitation or restriction on an insurer's right of subrogation to the position of its insured, but rather as an aid to the workman or his dependents in receiving workmen's compensation. The insurer pays directly to the workman, and the workman has a direct cause of action against his employer's workmen's compensation carrier. Although the insurer is not subrogated to the rights of injured workmen, the insurer is subrogated to the rights of its insured. The trial court erred in concluding that the insurer here was not so subrogated.

2. Did the trial court properly construe a stipulation approved by the Board of Workmen's Compensation as a partial settlement of the claims between the parties in the instant case, so as to relieve Alsco and Alford from liability on the indemnity agreement?

The stipulation related to the workmen's compensation claim by the widow of Wade Alford. Hendry denied that the decedent was its employee but contended that he was an employee of Alsco, and also denied that death resulted from injuries on the job. Alsco, while admitting death resulted from injuries on the job, denied that Wade Alford was its employee but contended that he was Hendry's employee. After a hearing on the workmen's compensation claim and while the record was kept open, the parties "agreed to compromise and settle what the insurers and employers contend to be a doubtful and disputed claim by Mrs. Wade Alford with Hendry Corporation and its insurer paying $15,524.00 and Alsco Construction Company and its insurer paying $2,000.00."

The stipulation further recites:

that it or they will promptly pay to the person entitled to same all benefits conferred by this Title and all installments of the compensation that may be awarded or agreed upon, and that the obligation shall not be affected by any default of the insured after the injury, or by any default in giving notice required by such policy, or otherwise. Such agreement shall be construed to be a direct promise by the insurer or insurers to the person entitled to compensation, enforceable in his name."

"7. As stated above, there exists between the parties, all of whom are represented by counsel, a bona fide dispute as to the facts, the determination of which will materially affect the right of the employee's widow to recover compensation, or the amount of or any additional compensation, and there is a genuine dispute as to the applicability of the provisions of Title 114 of said Code under those circumstances.

"8. In this posture, the parties stipulate and agree that employee's widow shall receive the total sum of $17,524.00, to be paid by the parties as set forth in paragraph 6 above, in full and final settlement of this doubtful and disputed claim."

That the settlement was limited only as to the claims of Wade Alford's dependents is abundantly clear from the foregoing. That it was not intended to cover any question of liability between Hendry and Liberty on the one part, and Alsco on the other part is even more manifest in paragraph 9 of the stipulation by which they agreed: "This stipulation and agreement shall not be considered as the admission of liability on the part of either of the employers or insurers and is not to be considered an admission of any kind between any of the parties in any other litigation of any kind or character, but is the compromise of a doubtful and disputed claim."

The trial court erred in construing the stipulation to have the effect of relieving Alsco and Alford from liability under the indemnity agreement.

3. Was the trial court correct in concluding that the indemnity agreement between Alsco and Hendry must be strictly construed in favor of the indemnitor, Alsco?

The trial court cited in its order, and the appellees rely upon, *Bohannon v. Southern R. Co.*, 97 Ga. App. 849 (104 SE2d 603) (1958), as absolute support for the conclusion that the indemnity agreement herein must be strictly construed in favor of the indemnitor. In *Bohannon,* however, as in Employers Casualty Co. v. Howard P. Foley Co., 158 F2d 363 (5th Cir. 1946), cited therein with approval, the rule of strict construction of the indemnity provision in favor of the indemnitor was applied because the indemnitees were seeking to absolve themselves of their own negligence. Generally an

indemnity agreement will not be sustained against the indemnitee's own negligence unless the agreement spells out the indemnitee's obligation in unequivocal terms. *Cash v. Street & Trail,* 136 Ga. App. 462, 465 (221 SE2d 640) (1975); *Binswanger Glass Co. v. Beers Const. Co.,* 141 Ga. App. 715, 717 (3) (234 SE2d 363) (1977). In the present case, however, no attempt is being made to indemnify Hendry's subrogee, Liberty Mutual, for any negligent acts of Hendry. Actually, there does not appear the slightest contention that the casualties were due to any negligence on the part of Hendry. Furthermore, there is nothing in the indemnity agreement which would require indemnification for Hendry's own negligence.

Under clear and unequivocal standards the language in the indemnity or hold harmless agreement is sufficient to require indemnification and the trial court erred in construing the agreement in favor of the indemnitor.

*Judgment reversed. Deen, P. J., and Birdsong, J., concur.*

ARGUED NOVEMBER 3, 1977 — DECIDED NOVEMBER 16, 1977 — REHEARING DENIED DECEMBER 7, 1977 —

*Bennet, Gilbert, Whittle, Harrell & Gayner, Wallace E. Harrell, William R. Waldrop,* for appellant.

*James G. Williams, Fendig, Dickey, Fendig & Whelchel, J. Thomas Whelchel,* for appellees.