Charles H. CHILDERS; Carpets By Amy Lynn, Inc., and Larry Hill, d/b/a Rolls & Cuts, Plaintiffs,

v.

EASTERN FOAM PRODUCTS, INC., Defendant.

Civ. A. No. C81–62R.

United States District Court,
N. D. Georgia,
Rome Division.

March 3, 1982.

**54**

Andy D. Lewis, Chattanooga, Tenn., Joseph T. Tuggle, Jr., Dalton, Ga., for plaintiffs.

Clayton H. Farnham and Mark T. Dietrichs, Atlanta, Ga., for State Farm.

Richard H. Gimer, Axel Kleiboemer, M. Stuart Madden, Santarelli & Gimer, Washington, D.C., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

In this diversity action, plaintiffs seek to recover for defendant's alleged strict liability in tort, common law negligence, and breach of warranty. Before the Court is the motion of defendant Eastern Foam Products, Inc. ("Eastern") to dismiss or in the alternative, to join State Farm Fire and Casualty Insurance Company ("State Farm") as a party.

On December 16, 1979, a fire swept through the Tunnel Hill, Georgia, warehouse of plaintiff Childers, in which the remaining plaintiffs stored carpet and carpet materials, including foam carpet padding manufactured by Eastern. Plaintiffs base their claims of Eastern's liability in part on Eastern's purported failure to provide adequate warnings of its product's flammable propensity. Together, the plaintiffs seek over $600,000.00 in damages.

In support of its motion, Eastern states that through discovery it has learned: (1) that State Farm, as plaintiffs' insurer, loaned $160,552.00 to plaintiffs, in exchange for a "loan receipt"; (2) that State Farm's total disbursements on account of the fire to date are $369,676.00, the excess over the loan receipt figure being paid to plaintiffs' creditors, attorney, and accountant; and (3) that State Farm had in its possession, prior to writing insurance for the Childers warehouse, information about the flammability of and the standard of care needed in the storage and handling of certain cellular plastics, including the flexible polyurethane foam carpet cushion at issue in this suit.

The Court will resolve Eastern's motion on the basis of items numbered (1) and (2). Therefore, the Court need not consider whether defendant's third enumeration, standing alone, warrants joinder of State Farm. Whether Eastern states a proper defense to plaintiffs' claim of failure to warn, by showing State Farm's knowledge of the hazards involved, is better resolved by a motion other than one to dismiss for failure to join a real party in interest.

The application of two of the Federal Rules of Civil Procedure guide resolution of defendant's motion. If State Farm is found to be the real party in interest under Rule 17, Fed.R.Civ.P., the focus shifts to Rule 19, Fed.R.Civ.P. to determine the remaining issue of joinder. 3A Moore's Federal Practice ¶ 19.01–1[5.–2].

 Fed.R.Civ.P. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." While the question of in whose name an action must be prosecuted is procedural, and thus governed by federal law, its resolution depends on the underlying substantive law of the forum state. This Court must look to the governing substantive law of Georgia to determine whether the plaintiffs in this action are indeed the real parties in interest—the parties, "who by the substantive law, [have] the right sought to be enforced"—as is required by Rule 17(a). *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 256–257 (5th Cir. 1980). As the *Lubbock* Court recognized,

> [T]he mere fact that plaintiff falls within one of the classes of persons enumerated in Rule 17(a) is not dispositive of the real party in interest question, for that rule assumes that the enumerated persons are granted the right to sue by the applicable substantive law.

*id.* See also, *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969); *Virginia Electric and Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 83 (4th Cir. 1973); *See v. Emhart*, 444 F.Supp. 71, 73 (W.D.Mo.1977); 6 Wright and Miller, Federal Practice and Procedure § 1544; 3A Moore's Federal Practice ¶ 17.07.

 The loan receipt in this case is typical of those used in many of the Georgia cases on this subject. The plaintiffs obtained $160,552.00 "as a loan . . . repayable only to the extent of any net recovery I/We may make from any person or . . . corporation . . . on account of loss by fire to my/our property on or about 12–16–80." The loan receipt further provided, in part, that as security for repayment, the insureds pledged to State Farm the recovery proceeds from the third party. Moreover, the insureds agreed to enter and prosecute in their name the suit for recovery against the tortfeasor "with all due diligence, at the expense and under the exclusive direction and control of said insurance company." Finally, the receipt stated that any money paid to the insureds by other participants in the loss was "held in trust pending instructions by Insurance Company." The receipt was signed by Childers as president of Carpets by Amy Lynn, Inc. and by "Larry Hill d/b/a Rolls and Cuts Cpts."

Language nearly identical to the terms employed here has been held by the Georgia courts to constitute a valid loan receipt, with the cause of action against the tortfeasor remaining in the insured. Thus, in *Green v. Johns*, 86 Ga.App. 646, 72 S.E.2d 78 (1952), the insured was paid the full amount of his claim through a loan receipt. The receipt stated that the payment was a loan, without interest, repayable only to the extent of recovery against the tortfeasor. As security for the loan, the insured pledged to prosecute his claims against the tortfeasor, and any lawsuit commenced was to be under the exclusive control of the insurer. The *Green* Court held,

> [S]uch arrangement operates, as respects the right of the insured to sue as the real party in interest, as a loan, and not as payment of the loss effecting subrogation to the insurer.

86 Ga.App. at 647, 72 S.E.2d 78.

Moreover, in *Southeast Transport Corp. v. Hogan Livestock Co., Inc.*, 133 Ga.App. 825, 212 S.E.2d 638 (1975), the court held that a loan receipt did not amount to an assignment, nor did it require that the party advancing the money and taking the receipt (i.e., the insurer) be made a party to an action brought to recover against the tortfeasor. The "action may proceed in the name of the insured." 133 Ga.App. at 827, 212 S.E.2d 638.

The validity of a loan receipt as a mechanism to keep an insurer out of the litigation between the insured and the tortfeasor was reaffirmed in *Hall v. Helms*, 150 Ga.App. 257, 257 S.E.2d 349 (1979).

The usual or ordinary form of loan receipt executed by an insured on the payment of a loss to him by his insurer but occasioned by a third party tortfeasor, is valid, is not a subrogation agreement, and allows an action to proceed in the name of the insured against the tortfeasor, subject to the control to the extent of its interest by the insurer, and further allows the insurer to recover to the extent of its payment out of any amount collected by the insured in such an action.

Despite the foregoing authorities, Eastern asks the Court to hold that the loan receipt here is different from those in the Georgia precedents. The language here is essentially identical to that of the loan receipt utilized and approved in *Green v. Johns, supra.* A comparison of the instant document and the one executed in *Kurtz v. Parker Plumbing and Heating Company*, 118 Ga.App. 130, 162 S.E.2d 755 (1968), *rev'd*, 225 Ga. 31, 165 S.E.2d 729 (1969), clearly points out the difference between the loan receipt arrangement and the assignment to the insurer of all the insured's claims, rights and interest against the tortfeasor.

Further, the Court rejects the invitation to disregard the decision in *McCann v. Dixie Lake etc. Co.*, 44 Ga.App. 700, 162 S.E. 869 (1931), the seminal Georgia case on the effect of loan receipts, in order to follow decisions typified by *City Stores Co. v. Lerner Shops*, 410 F.2d 1010 (D.C.Cir.1969). In short, Eastern has presented no case that even hints that the Georgia courts would not recognize the permissible use of a loan receipt in a case such as this one.

Therefore, under Georgia law, the loan receipt does not grant State Farm any substantive rights against Eastern. Rather, such document preserves the right of action in the insured, which may bring suit in its own name. *American Chain and Cable Co., Inc. v. Brunson*, 157 Ga.App. 833, 278 S.E.2d 719 (1981); *United States Fire Ins. Co. v. Farris*, 146 Ga.App. 177, 245 S.E.2d 868 (1978); *General Insurance Co. of America v. Bowers*, 139 Ga.App. 416, 228 S.E.2d 348 (1976).

Eastern's final discovery was that apart from the loan receipt money, State Farm had paid an additional sum of money directly to plaintiffs' creditors, attorney and accountant. Eastern barely expounded on the implications of these payments, while plaintiffs did not address this issue. Notwithstanding the parties' cursory treatment of this issue, the Court will address it on its own.

■ Subrogation is a legal as well as an equitable right. It is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor. *Liberty Mutual Insurance Co. v. Alsco Construction Co., Inc.*, 144 Ga.App. 307, 308, 240 S.E.2d 899 (1977). Subrogation may arise where the party claiming it advanced the money under an agreement, express or implied, made either with the debtor or the creditor, that he would be subrogated to the rights and remedies of the creditor. *McCollum v. Lark*, 187 Ga. 292, 200 S.E. 276 (1938); *Lee v. Hollman*, 182 Ga. 559, 562, 186 S.E. 189 (1936); *Gilbert v. Dunn*, 218 Ga. 531, 533, 128 S.E.2d 739 (1962).

■ Therefore, legal subrogation can take place "without any agreement to that effect made with the person paying the debt, and is independent of both creditor and debtor." *Southern Railway Company v. Overnite Transportation Company*, 223 Ga. 825, 830, 158 S.E.2d 387 (1967); *Cornelia Bank v. First National Bank of Quitman*, 170 Ga. 747, 154 S.E. 234 (1930). While the right to subrogation does not arise in one making payments when there is no duty to do so, *Cornelia Bank v. First National Bank of Quitman, supra*, it is rather inconceivable that State Farm gratuitously paid plaintiffs' creditors, attorney and accountant, without regard to State Farm's obligations under the insurance contract.

■ In *Lindsey v. Samoluk*, 135 Ga.App. 852, 219 S.E.2d 464 (1975), *rev'd on other grounds*, 236 Ga. 171, 223 S.E.2d 147 (1976), the court was faced with whether an in-

sured retained an interest in a claim against a tortfeasor to the extent his claim was in excess of the amount paid to him by his insurer. The court held that "where an insurer makes payments for only part of rather than all of its insured's loss, the insurer is subrogated *pro tanto* to the right of its insured and the insured retains that part of the claim in excess of the insurer's payment. Each owner of a part of the claim has a cause of action and may sue by joining the other part owner." 135 Ga.App. at 854, 219 S.E.2d 464.[1] A necessary corollary is that the insurer retains a part interest in its insured's claim against the tortfeasor, to the extent that the insurer has compensated the insured for his loss.

■ In this case, plaintiffs sued Eastern for over $600,000.00. State Farm paid plaintiffs or their creditors (including attorney and accountant fees) $369,760.00, of which $160,552.00 was in the form of a loan to plaintiffs. It appears that State Farm is subrogated to at least $209,208.00 of plaintiff's recovery. Therefore, State Farm is a part owner of the claim being sued on. *State Farm Mutual Automobile Insurance Company v. Fire Transportation Company*, 246 Ga. 447, 454 n. 13, 271 S.E.2d 844 (1980). Consequently, State Farm, having a substantive right under Georgia law, is a real party in interest within the meaning of Fed.R.Civ.P. 17(a).

Rule 19(a), Fed.R.Civ.P. provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of his claimed interest.

In this case, State Farm is clearly a person with a claimed interest in the subject of the lawsuit. Judgment for plaintiffs means that State Farm will be reimbursed at least in part for the funds it disbursed because of the fire. However, since State Farm is not at present a party, Eastern is faced with the substantial risk of defending against State Farm should Eastern either prevail in the initial action or the plaintiffs recover only part of their claim. That State Farm directs the present lawsuit by plaintiffs only highlights Eastern's predicament; if Eastern's defenses prevail, or plaintiffs fail to recover to the extent of their insurance coverage in this case, State Farm would still have a claim against Eastern.

The Court is aware of the many cases which hold that joinder of an insurer/subrogee is not required under Rule 19(a). *See,* 3A Moore's Federal Practice ¶ 19.07–1[2.–2]. Some of these cases provide that the tortfeasor does not incur substantial risk of multiple, double, or otherwise inconsistent obligations because such risk can be obviated by a final decree by the court. *Dudley v. Smith*, 504 F.2d 979, 983 (5th Cir. 1974); *Braniff Airways, Inc. v. Falkingham*, 20 F.R.D. 141 (D.Minn.1957). Other authorities have relied on the fact that a non-party who nonetheless directs the prosecution or defense of a suit is thus bound by the outcome of that suit. *See,* 1B Moore's Federal Practice ¶ 0.411[b].

■ Under Rule 19, pragmatic concerns, especially the effect on the parties and the litigation, control a court's decision on joinder. *Smith v. State Farm Fire and Casualty Company*, 633 F.2d 401, 405 (5th Cir. 1980). Many of the courts discussing the partial subrogee/joinder issue have been faced with the prospect that joinder of the subrogee would destroy diversity jurisdiction. *See, e.g., Virginia Electric and*

---

1. The Georgia Supreme Court reversed *Lindsey* on the ground that the insured had assigned his entire claim under the doctrine of *Kurtz v. Parker Plumbing and Heating Co., supra. Lindsey v. Samoluk*, 236 Ga. 171, 223 S.E.2d 147 (1976). In *State Farm Mutual Automobile*

*Insurance Co. v. Five Transportation Co.*, 246 Ga. 447, 454 n. 12, 271 S.E.2d 844 (1980), the Georgia Supreme Court approved the holding of the Court of Appeals in *Lindsey* insofar as it held that the insurer and insured each had an interest in part of the claim sued upon.

*Power Company v. Westinghouse Electric Corporation, supra.* In this case, this factor has not been raised, and the Court assumes that it is not a relevant concern. Therefore, State Farm's joinder is desirable and possible under Rule 19(a). *See generally* 7 Wright and Miller, Federal Practice and Procedure § 1619 (1972 and Supp. 1982); *United States v. Aetna Cas. and Sur. Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1966).

Moreover, by requiring joinder of State Farm, the Court seeks to avoid the problems foreseeable in drafting a final decree limiting State Farm's subsequent rights against Eastern. The Court is concerned also that the conclusive effect of any such decree would have minimal impact in subsequent litigation. If State Farm has exclusive control and direction over this litigation, is subrogated to part of plaintiffs' claim against Eastern, and its joinder does not require dismissal of the case for subject matter jurisdiction defects, State Farm should be joined.[2]

ACCORDINGLY, defendant's motion to join State Farm as a party plaintiff is GRANTED.

---

**2.** In light of this Order, the parties are directed to confer between themselves to determine the continued existence of outstanding discovery disputes. The parties shall report such status to the Court by letter within 20 days of the filing of this Order.