**FRANK BRISCOE COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**GEORGIA SPRINKLER COMPANY,**
**INC., Defendant-Appellee.**

No. 82–8479.

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1983.

Montet & Smith, Malcolm P. Smith, Atlanta, Ga., for plaintiff-appellant.

Long, Weinberg, Ansley & Wheeler, J. Kenneth Moorman, Marjorie M. Rogers, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

Frank Briscoe Company, Inc. (Briscoe), appeals the granting of summary judgment by the United States District Court for the Northern District of Georgia in favor of Georgia Sprinkler Company, Inc. (Georgia Sprinkler), in this diversity action for damages that allegedly were caused by a leak in a sprinkler system in the Richard B. Russell Federal Building and United States Courthouse (Russell Building) in Atlanta, Georgia. Briscoe contends the district court erred in holding that this action was barred by the principle that an insurer may not bring a subrogation action against a co-insured. For the reasons set forth below, we affirm.

The material facts are not in dispute. In May 1976, Briscoe entered into a contract with the United States of America—General Services Administration for the construction of the Russell Building in Atlanta, Georgia. As part of the contract Briscoe agreed to procure and maintain during the life of the contract general public liability insurance covering "all duties, services and work to be performed under the contract." Pursuant to this agreement, Briscoe obtained builder's risk insurance through the Hartford Fire Insurance Company (Hartford) covering the value of materials and property on the site during the construction. The policy, in the declarations page, named the insureds as "Frank Briscoe Co., Inc., and All Sub and Sub-Contractors."

In August 1976, Briscoe entered into a subcontract with Georgia Sprinkler for the installation of a fire protection sprinkler system at the Russell Building. Pursuant to this contract, Georgia Sprinkler agreed to "indemnify and save harmless ... the Contractor [Briscoe] against any loss, cause of injury or damage to persons or property arising or resulting from the performance of this Sub-Contract." Georgia Sprinkler also agreed to procure and maintain public liability insurance and property damage liability insurance. Apparently in accordance with this provision, Georgia Sprinkler obtained a general liability insurance policy from Commercial Union Insurance Company naming Briscoe as certificate holder.

Georgia Sprinkler commenced work pursuant to the subcontract in December 1976. In October 1978, a leak occurred in the sprinkler system installed by Georgia Sprinkler which allegedly resulted in extensive property damage. Subsequent to the leak, Briscoe filed a claim with Hartford under its policy for the losses that allegedly resulted from the leak. In March 1979, Hartford forwarded Briscoe a draft in the amount of the losses, less the deductible, made payable to the order of "Frank Briscoe, Inc., and All Subcontractors." The subcontractors' contracts with Briscoe were thereupon amended to reflect the amounts of their losses. Briscoe also executed a loan receipt in the amount of the draft in favor of Hartford granting Hartford the right to prosecute, in Briscoe's name, legal proceedings necessary to enforce any claim arising from the leakage.

Following Hartford's payment of the loss and the execution of the loan receipt, this action was brought in the name of Frank Briscoe, Inc., against Georgia Sprinkler asserting liability under the indemnity agreement and on the grounds of negligence. The district court granted summary judgment in favor of Georgia Sprinkler holding that, under Georgia law, an insurer may not maintain, directly or indirectly, a subrogation action against a co-insured.

■ The parties agreed below, and did not dispute here, that although this case is prosecuted in Briscoe's name it is in actuality an action by Hartford as subrogee of Briscoe under the builder's risk policy.[1] R. 538–39.

■ The issue presented in this appeal is whether a right of subrogation exists in favor of Hartford. Generally, subrogation is allowed in favor of an insurer who pays a loss suffered by its insured which was occasioned by the negligence of a third party. *Liberty Mutual Insurance Company v. Alsco Construction Company, Inc.,* 144 Ga. App. 307, 240 S.E.2d 899 (1977); *Turner Construction Company v. John B. Kelly Company,* 442 F.Supp. 551 (E.D.Pa.1976); 6A Appleman, Insurance Law and Practice § 4054 (1972). The principle of subrogation has been described as being "of equitable origin and benevolence ... founded upon the dictates of refined justice, and its basis the doing of complete, essential, and perfect justice between the parties ... [with] its object [being] the prevention of injustice." *Southern R. Co. v. Overnight Transport, Co.,* 223 Ga. 825, 830, 158 S.E.2d 387 (1967); *Liberty Mutual Insurance Company, supra,* 144 Ga.App. at 308, 240 S.E.2d 899. Subrogation does not arise, however, in favor of the insurer against its insured since by definition subrogation arises only with respect to the rights of the insured against third

persons to whom the insurer owes no duty. *E.C. Long, Inc., v. Brennan's of Atlanta, Inc.,* 148 Ga.App. 796, 252 S.E.2d 642 (1979); *Turner Construction Company, supra; Transamerica Insurance Company v. Gage Plumbing and Heating Company,* 433 F.2d 1051 (10th Cir.1970); 6A Appleman, *supra,* § 4055. Similarly, it has been held that where there are two co-insureds and the insurer pays one insured under the policy, no right of subrogation arises against the additional insured. *Id. But see McBroome-Bennett Plumbing, Inc., v. Villa-France, Inc.,* 515 S.W.2d 32 (Tex.Civ.App. 1974); *Paul Tishman Co. v. Carney and Del Guidice, Inc.,* 36 A.D.2d 273, 320 N.Y.S.2d 396 (1971), *aff'd* 34 N.Y.2d 941, 359 N.Y. S.2d 561 (1974).

The district court, after reaffirming the above principles, concluded that the issue in the instant case was controlled by the recent Georgia Court of Appeals decision in *E.C. Long, Inc., v. Brennan's of Atlanta, Inc., supra.* In *Brennan's,* the owner of a mansion contracted with a general contractor for the purpose of converting the mansion into a restaurant. The owner procured builder's risk insurance on the property, naming the owner and contractor as co-insured under the policy. After the property was destroyed by fire, the insurance companies insuring the property paid the owner and contractor jointly for the losses. After the drafts for the losses were issued and endorsed, the insurance companies obtained a loan receipt and instituted a suit against the contractor in the name of the property owner contending the contractor negligently caused the loss. The court concluded the action was barred on two grounds. First, the court concluded the owner and contractor had waived claims against each other by express agreement to the extent covered by insurance and therefore there were no de-

---

1. Where an insurance company as subrogee has paid an entire loss suffered by the insured it is the only real party in interest and must sue in its own name. *United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 380–81, 70 S.Ct. 207, 215, 94 L.Ed. 171 (1949). When a loan receipt is utilized, however, the insured retains a sufficient interest so as not to displace him as the real party in interest under F.R. Civ.P. 17(a). *R.J. Enstrom Corporation v. Interceptor Corporation,* 520 F.2d 1217 (10th Cir. 1975); *Ketona Chemical Corporation v. Globe Indemnity Co.,* 404 F.2d 181 (5th Cir.1968); *American Chain and Cable Co., Inc., v. Brunson,* 157 Ga.App. 833, 278 S.E.2d 833 (1981).

rivative rights held by the insurance companies against the contractor. Second, the court held the contractor was a co-insured and insurers could not "take subrogation" and sue a co-insured even though the co-insured caused the loss. *Id.* 148 Ga.App. at 803–04, 252 S.E.2d 642. This principle applied, according to the court, whether the insurer sues directly in its own name or indirectly in the name of the co-insured through the use of a loan receipt. *Id.*

Briscoe seeks to avoid the application of *Brennan's* to the case before us on four grounds. Briscoe first asserts that the district court erred in its application of Georgia law to this case rather than New Jersey law. Briscoe argues that because the insurance policy was issued and delivered in New Jersey, New Jersey law is applicable under the Georgia choice of law rule that an insurance contract is interpreted in accordance with the law of the place of delivery. *Canal Insurance Company v. Aldridge,* 489 F.Supp. 157 (S.D.Ga.1980); *Pink v. AAA Highway Express,* 191 Ga. 502, 13 S.E.2d 337 (1941). Because there appears to be no New Jersey case law or statutes dispositive of this appeal, Briscoe urges us to adopt the "reasonable rule" followed in various jurisdictions that would not preclude a subrogation action under similar facts as this case. We decline to do so. A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state. *Klaxon Company v. Stenton Electric Manufacturing Company,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Notwithstanding certain confusion concerning the current choice of law rule followed in the Georgia courts, *see Brown v. Inter-Ocean Insurance Company,* 438 F.Supp. 951 (N.D.Ga.1977); *Allen v. Smith and Medford, Inc.,* 129 Ga.App. 538, 199 S.E.2d 876 (1973); *Robinson v. Ravenel Company,* 411 F.Supp. 294 (N.D.Ga.1976), it is clear that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. *White v. Borders,* 104 Ga.App. 746, 123 S.E.2d 170 (1961); *Budget Rent-A-Car Corp. v. Fein,*

342 F.2d 509 (5th Cir.1965). When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law. *Id.; Motz v. Alropa Corp.,* 192 Ga. 176, 15 S.E.2d 237 (1941); Rees, "Choice of Law in Georgia: Time to Consider a Change?", 34 Mer.L.Rev. 787–789 (1983). Briscoe admittedly cannot cite an applicable New Jersey statute or case controlling the issues in this case. Therefore, under the current choice of law jurisprudence extant in Georgia, Georgia law must control.

Second, Briscoe asserts that unlike the situation in *Brennan's,* the parties did not waive all claims against each other to the extent covered by insurance. By contrast, they argue, Georgia Sprinkler expressly agreed to indemnify Briscoe from losses such as the present one. This distinction, however, is immaterial. The court in *Brennan's* based its holding upon the alternative grounds that the waiver extinguished any subrogation claims and that as a matter of law subrogation would not lie against a co-insured. *Id.,* 148 Ga.App. at 803–04, 252 S.E.2d 642.

Third, Briscoe argues this case is distinguishable from *Brennan's* because the builder's risk policy at issue was intended to cover only property damage to the limited extent of each subcontractor's property present on the job site and not to provide full liability coverage. Briscoe's argument is predicated upon the existence of the indemnification agreement which they contend evidences an intent that the builder's risk policy not cover this type of loss. Therefore Georgia Sprinkler occupies a "limited" or "partial" insured status under the policy and thus this claim is not within the purview of the rule enunciated in *Brennan's.*

Briscoe cites a line of authorities from other jurisdictions supporting its position. However, as recognized by the court below, in these cases the subcontractor was either not named as an insured or their insured status was limited "as their interest may appear." For example, in *McBroome-Ben-*

nett Plumbing, Inc., v. Villa-France, Inc., supra, a contractor's builder's risk insurer brought an action as subrogee of the contractor against a subcontractor for negligence. The policy named only the general contractor as insured and covered property for which the "assured is liable." The subcontractor defended on the grounds that it was co-insured under the policy. The Texas court in looking at the "realities" of the case held that the subcontractor was a "limited" co-insured only to the extent of the general contractor's liability to them and not to the extent of its negligence to others. In *Greenbriar Shopping Center v. Lorne Company,* 310 F.Supp. 303 (N.D.Ga.1969), aff'd 424 F.2d 544 (5th Cir.1970); the owner of the property brought an action against the subcontractor for negligence and the subcontractor filed a third-party action against the insurer of the builder's risk policy. The policy named as insureds the owner, the general contractor, and the subcontractors "as their interest may appear." The court held that the subcontractor was not a co-insured for purposes of losses occasioned by its torts against another insured. *See also Public Service Co. of Okla. v. Black and Veatch, Consulting Engineers,* 328 F.Supp. 14 (N.D.Okla.1971); *Paul Tishman Company, Inc., v. Carney and Del Guidice, Inc., supra; Baltimore Contractors, Inc., v. Circle Floor Company of Washington,* 318 F.Supp. 106 (D.Md.1970). Notwithstanding the cogent analysis presented in these cases we are bound by *Brennan's.* Superficially these cases are predicated upon the determination that the subcontractors are not co-insured under the policies in question. The policy at issue here, however, expressly provides coverage to "Frank Briscoe and All Sub and Sub-Contractors" without limitation upon their interest. More fundamentally, these cases are predicated upon the policy choice that it would be contrary to basic principles of equity and justice to

preclude subrogation. We, of course, are not free to declare the policy regarding subrogation actions in Georgia.[2] The policy in Georgia is to not allow subrogation against a co-insured and to place the risk of loss upon the insurance company notwithstanding an indemnity provision. *E.C. Long v. Brennan's, supra; Tuxedo Plumbing and Heating Company, Inc., v. Lie-Nielsen,* 245 Ga. 27, 262 S.E.2d 794 (1980), rev'g 149 Ga.App. 502, 254 S.E.2d 729 (1979), conformed 154 Ga.App. 306, 268 S.E.2d 361 (1980).

In conjunction with this argument, Briscoe's final contention is that the parties' intent was to place the risk of loss upon Georgia Sprinkler's liability insurer. The district court's reliance on *Brennan's,* therefore, frustrated the parties' "clearly stated intention." We cannot agree, however, with Briscoe's characterization of the issue. Even assuming that the parties' intent was to provide Briscoe the right of indemnification against Georgia Sprinkler, *see Tuxedo, supra* (where insurance is agreed to be provided as part of a business transaction the risk of loss is conclusively presumed to be intended to fall upon the insured notwithstanding indemnification agreements between the parties), the issue in this case is not whether Briscoe has a right of action against Georgia Sprinkler but whether or not an insurer who pays a loss to one insured party is subrogated to the claim of that party against another insured whose negligence caused the loss. The Georgia courts have answered this question in the negative.

AFFIRMED.

TJOFLAT, Circuit Judge, dissenting:

The majority concludes that this case is governed by *E.C. Long, Inc. v. Brennan's of*

---

**2.** With deference to Justice Cardozo we must accept *Brennan's* as the final truth. *See* B. Cardozo, The Nature of the Judicial Process 23 (1921), quoted in *McBroome-Bennett Plumbing, Inc., v. Villa-France, supra* at 37 n. 1:

The rules and principles of case law have never been treated as final truths, but as

working hypothesis, continually retested in the great laboratories of the law, the courts of justice. Every new case is an experiment; and if the accepted rule which seems applicable yields a result which is felt to be unjust, the rule is reconsidered.

*Atlanta, Inc.,* 148 Ga.App. 796, 252 S.E.2d 642 (1979). I disagree.

In *Brennan's,* the owner of a mansion contracted with a general contractor to convert its mansion into a restaurant. The contract required the owner to procure fire insurance on the property protecting both parties. The owner fulfilled this obligation by obtaining a fire insurance policy that covered the parties as co-insureds. The parties intended that neither would have a claim against the other for any loss covered by this insurance policy, and they so provided in their contract: "The Owner and Contractor waive all rights against each other for damages caused by fire or other peril to the extent covered by [the fire] insurance [policy] provided [pursuant to this contract] . . . ."

During the renovation, a sub-contractor, hired by the general contractor, broke a gas line, allowing gas to seep into the mansion. An explosion and fire followed, and the mansion was destroyed. The insurer paid the owner and the general contractor for the loss, issuing drafts payable to them jointly, and received a loan receipt from the owner giving the insurer the right to enforce any claims the owner might have against any third party for the loss. The insurer then brought this tort action in the owner's name against the general contractor.

The contractor, in its answer, alleged that the suit was barred by provisions of the construction contract I have cited above. The *Brennan's* court agreed. It held that the parties, by contract, " 'waived all rights against each other for damages caused by fire or other peril to the extent covered by insurance . . . .' " and that this foreclosed any claim the owner, or its insurer, might have against the contractor for any fire loss caused by the latter's negligence.* 252

S.E.2d at 645–46. In reaching this holding the court relied on two other cases that involved similar waiver provisions. *Id.* 252 S.E.2d at 646–47. *Luckenbach v. W.J. McCahan Sugar Ref. Co.,* 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918), and *Wager v. Providence Insurance Co.,* 150 U.S. 99, 14 S.Ct. 55, 37 L.Ed. 1013 (1893).

In the case at hand, the construction contract contained no waiver provision. To the contrary, the contract provided that Georgia Sprinkler [the sub-contractor] would "at all times indemnify and save harmless [Briscoe, the contractor,] against any loss, cause of injury or damage to persons or property arising or resulting from the performance of [the contract]." The contract also provided that Georgia Sprinkler would "make good any loss or damage to any of [the] work . . . from any cause whatsoever . . . ." Briscoe, in one count of its complaint, now sues Georgia Sprinkler on these indemnity provisions. Georgia Sprinkler does not deny that these indemnity provisions literally embrace Briscoe's claim. The only defense Georgia Sprinkler can raise to avoid liability, then, is that the parties did not contemplate that these provisions would apply to any Briscoe loss covered by an insurance policy purchased by Briscoe that named Georgia Sprinkler a co-insured.

Faced with such a defense, the district court's first task is to determine whether the indemnity provisions, considered in the light of the other contract provisions, are ambiguous. If ambiguous, the court's second task is to determine the parties' true intent, a question of fact as to which there is no evidence (beyond the contract document itself) in the record before us. The district court has discharged *neither* of these tasks; accordingly, I would remand the case so that it can do so.

* The majority seizes upon one statement made by the *Brennan's* court to decide this case: "The insurer having paid the other insured (the owner) cannot take subrogation and sue a co-insured even though the co-insured caused the damages." 252 S.E.2d at 647. I believe that this broad generalization is *dicta;* the *Brennan's* court decided the case on the existence of the waiver provision and nothing else was nec-

essary to the decision. Therefore, I refuse to interpret *Brennan's* as barring in all cases an insurer from suing a co-insured based upon the claims of another co-insured to which it has become subrogated especially in a case such as the one before us, where the defendant has agreed to indemnify the plaintiff. Furthermore, I note that no Georgia court after *Brennan's* has interpreted the case in that manner.