**THIRD DIVISION**
**DILLARD, P. J.,**
**MARKLE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 20, 2020**

# In the Court of Appeals of Georgia

A17A1706, A17A2027, A17A2029, A17A2030, A17A2031, A18A0516. MILLIKEN & COMPANY v. GEORGIA POWER COMPANY (six cases).

PHIPPS, Senior Appellate Judge.

This is the second appearance of these companion appeals before this Court. In *Milliken & Co. v. Ga. Power Co.*, 344 Ga. App. 560 (811 SE2d 58) (2018) ("*Milliken I*"), we affirmed the trial court's grant of summary judgment to defendant Georgia Power Company as to seven cross-claims filed against it by defendant Milliken & Co., the owner of the land where the plane crash that injured or killed plaintiffs occurred. The trial court had held that a hold-harmless provision in a 1989 easement granted to Georgia Power operated as a covenant not to sue rather than an indemnity agreement. See id. at 561-562. We held that the easement provision was void as against public policy under former OCGA § 13-8-2, Georgia's anti-indemnity

statute. Id. at 564. The Supreme Court of Georgia granted certiorari and reversed, holding that the easement provision was not void because it "did not require indemnification" for damages "caused *solely* by [Milliken's] negligence[.]" (Footnote omitted; emphasis in original.) *Milliken & Co. v. Georgia Power Co*., 306 Ga. 6, 13 (1) (b) (829 SE2d 111) (2019) ("*Milliken II*"). Our Supreme Court then remanded the case to this Court with direction to address Milliken's original assertions on appeal. Id. at 14. Accordingly, we now consider whether the trial court erred in granting summary judgment on Milliken's cross-claims. Because we conclude that the easement did create an indemnity obligation in favor of Milliken, we reverse.

The relevant facts are laid out as follows in the Supreme Court's opinion in *Milliken II*:

> In 2013, a small business jet crashed into a Georgia Power Company transmission pole on Milliken & Company's property near the Thomson-McDuffie Regional Airport in Thomson, Georgia. The two pilots were injured and the five passengers died. In the wake of the crash, the pilots and the families of the deceased passengers filed a total of seven lawsuits against multiple defendants, including Georgia Power and Milliken. The complaints in those seven suits alleged that a transmission pole located on Milliken's property was negligently erected and maintained within the airport's protected airspace. The record evidence shows that Georgia Power constructed the transmission pole

2

on Milliken's property for the purpose of providing electricity to Milliken's manufacturing-plant expansion, and that the pole was constructed pursuant to a 1989 Easement between Georgia Power and Milliken. In each of the seven suits, Milliken filed identical cross-claims against Georgia Power, alleging that Georgia Power was contractually obligated to indemnify Milliken "for all sums that Plaintiffs may recover from Milliken" under Paragraph 12 of the 1989 Easement, which provides:

"[Georgia Power] Company, its successors or assigns shall hold [Milliken], its successors or assigns harmless from any damages to property or persons (including death), or both, which result from [Georgia Power] Company's construction, operation or maintenance of its facilities on said easement areas herein granted."[1]

---

[1] Our Supreme Court also noted that Paragraph 12 of the 1989 Easement granted Georgia Power a right of way

to construct, erect, install, operate, maintain, inspect, reconstruct, repair, rebuild, renew and replace thereon a substation and overhead and underground electric transmission, distribution and communication lines, with necessary or convenient towers, frames, poles, wires, manholes, conduits, transformers, switches, breakers and communication equipment, with the necessary wires, fixtures, appliances, protective wires and devices, buildings, sewers, drains, fences and other facilities in connection therewith . . . . including the right . . . to clear, grade, fill excavate, ditch and drain said substation tract[.]

3

Georgia Power moved for summary judgment on the cross-claims. The trial court granted summary judgment to Georgia Power in all seven actions, reasoning that Paragraph 12 of the 1989 Easement operates as a covenant not to sue, rather than as an indemnity agreement, because it "nowhere contains the word 'indemnity'" and "it is not so comprehensive regarding protection from liability."

*Milliken II*, 306 Ga. at 6-7.[2]

On appeal, Milliken asserts that the trial court erred when it granted Georgia Power summary judgment on the cross-claims because Paragraph 12 indemnifies Milliken against all "damages," including plaintiffs' claims, resulting from Georgia

---

Id. at 8 (1) (a).

[2] Our Case Nos. A17A1706, A17A2027, A17A2029, A17A2030, and A17A2031, which were addressed in the Supreme Court's Case No. S18G0876, arise from the trial court's entry of judgment in favor of Georgia Power on Milliken's cross-claims in five plaintiffs' actions. See *Milliken II*, 306 Ga. at 7, n. 1. Our Case No. A17A2028 was also remanded by the Supreme Court, see id., but was withdrawn from this Court on June 27, 2019. In Case No. S18G1107, granted as to our Case No. A18A0516 (a summary affirmance under our Rule 36), the Supreme Court vacated and remanded "for further proceedings consistent with" its opinion. Id. at 14-15. We note further that Georgia Power has not moved this Court, either on the original appeals or on remand from the Supreme Court, to supplement the record concerning an apparent defense verdict in Milliken's favor in one of the plaintiffs' cases, which might have mooted our Case No. A17A2030. See id. at 14, n.7. We therefore take no action on the question.

Power's negligent construction, operation, or maintenance of the transmission pole on Milliken's property. We agree.

"The construction of a contract is a question of law for the court." OCGA § 13-2-1. In construing a contract so as implement the intentions of the parties, a court is first required "to look to the plain meaning of the words of the contract[.]" (Citation and punctuation omitted.) *Argo v. G-Tec Svcs*., 338 Ga. App. 608, 609 (1) (791 SE2d 193) (2016).

> [I]t is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms. "Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning." OCGA § 13-2-2 (2). Furthermore, courts must favor a construction that upholds the contract in whole and in every part, and look at the whole contract in construing any part. OCGA § 13-2-2 (4). Courts should not render any language in a contract as superfluous, and any construction that renders portions of the contract language meaningless should be avoided.

(Citations and punctuation omitted.) Id. at 609-610 (1).

Specifically, "[i]n a contract of indemnity the indemnitor, for a consideration, promises to indemnify and save harmless the indemnitee against liability of the indemnitee to a third person, or against loss resulting from such liability." (Footnote and punctuation omitted.) *Old Republic Nat'l Title Ins. Co. v. Darryl J. Panella, LLC*, 319 Ga. App. 274, 277 (734 SE2d 523) (2012). In order to create a binding contract for indemnity, the indemnitor need only express the intent to protect the indemnitee against a loss; the contract "is not required to contain the magic word 'indemnify.'" (Footnote omitted.) Id.; see also Black's Law Dictionary, 848 (10th ed. 2014) (defining "indemnify" as "to reimburse for a loss suffered because of a third party's *or* one's own act or default; *hold harmless*") (emphasis supplied); *Liberty Mutual Ins. Co. v. Alsco Const.*, 144 Ga. App. 307, 311 (240 SE2d 899) (1977) (agreement to hold "harmless and free of liability for injury to or death of any person and for loss of or damage to" equipment was, "[u]nder clear and unequivocal standards," "sufficient to require indemnification").

We cannot agree with the trial court's conclusion that Paragraph 12 amounts to a covenant not to sue. The paragraph's reference to personal injuries, including death, would be rendered mere surplusage under that reading because Georgia Power could never have standing to assert a claim for wrongful death. See *Tolbert v. Maner*,

6

271 Ga. 207, 208 (518 SE2d 423) (1999) (because OCGA § 51-4-2 is in derogation of the common law, only those persons specified in the statute may maintain a wrongful death action); *Argo*, 338 Ga. App. at 609 (1) ("any construction that renders portions of the contract language meaningless should be be avoided") (citations omitted).

Paragraph 12 refers not to claims or suits, but rather to "damages . . . resulting from" Georgia Power's activities on the easement, and seeks to "hold [Milliken] harmless" as to "damages to property or persons (including death), or both, which result from [Georgia Power's] construction, operation or maintenance of its facilities on said easement areas herein granted." It is also beyond dispute that the claims asserted by plaintiffs, whatever their ultimate merit, arise from "damages" or injury to them, "including death," resulting from Georgia Power's "construction, operation or maintenance" of the transmission pole, located "on said easement area," into which the plane crashed. See *Liberty Mutual*, 144 Ga. App. at 311 (2); *Rankin v. Smith*, 113 Ga. App. 204, 205-207 (147 SE2d 649) (1966) (a party's agreement "to hold harmless and release" other parties "from any and all liability and obligations *resulting from*" the parties' status as stockholders or officers was "in the nature of an indemnity contract") (emphasis supplied).

7

Nor is this a case in which Milliken will be indemnified from its own negligence, which Georgia law will not authorize in the absence of an explicit undertaking by the indemnitor. *Viad Corp. v. U. S. Steel Corp.*, 343 Ga. App. 609, 614-615 (1) (808 SE2d 58) (2017) ("[W]e will not interpret 'contractual indemnities [to] extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered'"), quoting *Ryder Integrated Logistics v. BellSouth Telecommunications*, 281 Ga. 736, 737-738 (642 SE2d 695) (2007). Rather, as Milliken acknowledged below, and as our Supreme Court explained,[3] Milliken cannot be owed indemnity unless Georgia Power is also found to have been negligent. See *Benson Paint Co. v. Williams Const. Co.*, 128 Ga. App. 47, 50 (2) (195 SE2d 671) (1973) (if two defendants' negligence "combined to cause the plaintiff's injuries," then a provision granting indemnity by one to the other would be enforceable "under the express terms of the contract").

For all these reasons, we conclude that Paragraph 12 of the 1989 Easement plainly includes Georgia Power's promise to indemnify Milliken from any personal

---

[3] *Milliken II*, 306 Ga. at 12, n. 5 ("indemnification could potentially apply in certain instances where the combined negligence of Georgia Power and Milliken . . . results in damages. But none of these scenarios would implicate [OCGA § 13-8-2's] prohibition on indemnification for an indemnitee's 'sole negligence'").

8

injury, death, or other "damages" arising from the claims of third parties, such as plaintiffs, "result[ing] from" Georgia Power's activities on the easement. The trial court therefore erred when it granted Georgia Power summary judgment on Milliken's cross-claims for indemnity.

*Judgments reversed. Dillard, P. J., and Markle, J., concur.*